MICHAEL N. FEUER, SBN 111529
City Attorney
JAMES P. CLARK, SBN 64780
Chief Deputy City Attorney
LEELA A. KAPUR, SBN 125548
Executive Assistant City Attorney
VALERIE L. FLORES, SBN 138572
Managing Senior Assistant City Attorney
MICHAEL DUNDAS, SBN 226930
Deputy City Attorney
DANIA MINASSIAN, SBN 198928
STEVEN H. HONG, SBN 212727
200 North Main Street, City Hall East
Suite 800
Los Angeles, California 90012
mike.dundas@lacity.org
Telephone: (213) 978-8130
Facsimile: (213) 978-8312

MITCHELL A. KAMIN, SBN 202788
NEEMA T. SAHNI, SBN 274240
Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
mkamin@cov.com
Telephone:  (424) 332-4800
Facsimile:  (424) 332-4749

DAVID M. ZIONTS, *pro hac vice*
IVANO M. VENTRESCA, *pro hac vice*
BENJAMIN L. CAVATARO, *pro hac vice*
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
dzionts@cov.com
Telephone: (202) 662-6000
Facsimile:  (202) 662-5987

*Attorneys for Plaintiff City of Los Angeles*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>        Plaintiff,<br><br>    v.<br><br>JEFFERSON B. SESSIONS, III, in his official capacity as Attorney General of the United States; LAURA ROGERS, in her official capacity as Acting Principal Deputy Assistant Attorney General of the Office of | Case No.: 2:18-cv-7347-R-JCx<br><br>**CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION**<br><br>Judge: The Honorable Manuel L. Real |

Justice Programs; UNITED STATES
DEPARTMENT OF JUSTICE.

     Defendants.

Date: November 5, 2018
Time: 10:00 a.m.

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................... 1

II.    FACTUAL BACKGROUND.......................................................... 2

    A.    The Edward Byrne Memorial Justice Assistance Grant Program ....... 2

    B.    Los Angeles Uses Byrne JAG Funding To Promote Critical Local Law Enforcement Work As Specified In Congress's Funding Statute 3

    C.    This Court Enjoined DOJ's Imposition Of Immigration Conditions On Local Law Enforcement Grants ........................................... 4

    D.    DOJ Continues To Impose Unlawful Immigration Conditions on Local Criminal Justice Grants, Despite this Court's Earlier Order ..... 5

    E.    Los Angeles Applies For FY 2018 Funding ........................................ 9

III.    ARGUMENT............................................................... 11

    A.    The Challenged Conditions Are Unlawful........................................ 11

        1.    The Challenged Conditions Are *Ultra Vires* ........................... 11

        2.    The Challenged Conditions Violate the Spending Clause....... 21

        3.    The Challenged Conditions Violate the Administrative Procedure Act........................................................ 22

    B.    Los Angeles Will Suffer Irreparable Injury Absent An Injunction ... 22

    C.    The Balance Of Equities And The Public Interest Weigh Heavily In Favor Of The Requested Injunction.................................................. 23

    D.    The Court Should Issue A Program-Wide Injunction....................... 24

IV.    CONCLUSION........................................................... 25

i

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Branch v. Smith*,
   538 U.S. 254 (2003) .................................................................... 13

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) .................................................................... 13

*City & Cty. of San Francisco v. Sessions*,
   No. 3:17-cv-04642, Dkt. 145 (N.D. Cal. Oct. 5, 2018) ..........................4, 6, 13, 14, 17

*City of Arlington v. FCC*,
   569 U.S. 290 (2013) .................................................................... 11

*City of Chicago v. Sessions*,
   2018 WL 3608564 (N.D. Ill. Jul. 27, 2018) ................................................ *passim*

*City of Chicago v. Sessions*,
   888 F.3d 272 (7th Cir. 2018) ........................................................ 1, 5, 11, 16

*City of Los Angeles v. Sessions*,
   No. 17-cv-07215-R, Order Granting Plaintiff's Application for
   Preliminary Injunction, Dkt. 93 (C.D. Cal. Sept. 13, 2018) ................................. *passim*

*City of Los Angeles v. Sessions*,
   No. 17-cv-07215-R, Order Denying Defendants' Motion to Dismiss, Dkt.
   94 (C.D. Cal. Sept. 17, 2018) ........................................................... 22

*City of Los Angeles v. Sessions*,
   293 F. Supp. 3d 1087 (C.D. Cal. 2018) ..................................................... 13

*City of Philadelphia v. Sessions*,
   309 F. Supp. 3d 289 (E.D. Pa. 2018) ..................................................... *passim*

*Encino Motorcars, LLC v. Navarro*,
   136 S. Ct. 2117 (2016) .................................................................. 22

*Gregory v. Ashcroft*,
   501 U.S. 452 (1991) .................................................................... 19

*Louisiana Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986)..................................................................................11

*Monsanto Co v. Geertson Seed Farms*,
    561 U.S. 139 (2010)..................................................................................11

*Murphy v. NCAA*,
    138 S. Ct. 1461 (2018).......................................................................17, 18

*Nevada v. Skinner*,
    884 F.2d 445 (9th Cir. 1989) ...................................................................21

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) ...................................................................11

*San Francisco v. Trump*,
    897 F.3d 1225 (9th Cir. 2018) ...................................................................4

*Sever v. NLRB*,
    231 F.3d 1156 (9th Cir. 2000) .................................................................22

*South Dakota v. Dole*,
    483 U.S. 203 (1987)..................................................................................21

*United States v. California*,
    314 F. Supp. 3d 1077 (E.D. Cal. 2018) ............................................*passim*

**Statutes**

5 U.S.C. § 706(2)(A)........................................................................................22

8 U.S.C. § 1366(1), (3).................................................................................9, 20

8 U.S.C. § 1101(b)(3).......................................................................................19

8 U.S.C. § 1226(a), (c) .....................................................................................14

8 U.S.C. § 1231(a) ...........................................................................................14

8 U.S.C. § 1324 .......................................................................8, 9, 18, 19, 20

8 U.S.C. § 1357(a) ...........................................................................................15

8 U.S.C. § 1373 .......................................................................................*passim*

8 U.S.C. § 1644 ................................................................ 6, 10, 16, 17

18 U.S.C. § 1071 ................................................................. 9, 19, 20

18 U.S.C. § 1072 ..................................................................... 9, 20

34 U.S.C. § 10102(a)(6) ............................................................ 5, 11

34 U.S.C. § 10152(a)(1) ............................................................ 2, 21

34 U.S.C. § 10153 ................................................................... *passim*

34 U.S.C. § 10228 ...................................................................... 12

42 U.S.C. § 2000d ...................................................................... 13

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ......................................... 13

H.R. Rep. No. 109-233 ............................................................... 21

## I.    <u>INTRODUCTION</u>

This Court has now twice rejected the efforts of the United States Department of Justice ("DOJ") to unlawfully use federal grant funding that Congress authorized for local criminal justice programs, instead to pressure States and localities into participating in federal civil immigration enforcement.  In one of those cases, this Court enjoined DOJ from imposing such immigration-related conditions on the same Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") program that is at issue in this case.  *See City of Los Angeles v. Sessions*, No. 17-cv-07215-R, Order Granting Plaintiff's Application for Preliminary Injunction, Dkt. 93 (C.D. Cal. Sept. 13, 2018) ("Sept. 13 Order").  Several other courts around the country, including the Seventh Circuit, have reached the same conclusion.  *See City of Chicago v. Sessions*, 888 F.3d 272, 293 (7th Cir. 2018) (preliminary injunction against the Notice and Access Conditions); *City of Chicago v. Sessions*, 2018 WL 3608564, at *13 (N.D. Ill. Jul. 27, 2018) (permanent injunction against the Notice, Access, and Section 1373 Conditions); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 338-42 (E.D. Pa. 2018) (same).

But DOJ will not take "no" for an answer.  For the fiscal year ("FY") 2018 grant cycle, DOJ has re-imposed the conditions this Court enjoined for the FY 2017 grant cycle, with cosmetic changes that make no legal difference.  DOJ also has added new and even more aggressive immigration-related conditions, which suffer from the same fatal legal flaws.  The latest iteration of DOJ's immigration overreach is unlawful for the same reasons as the earlier attempts that this Court and others have enjoined.

DOJ's imposition of unlawful conditions will, if left unchecked, cause irreparable harm to Los Angeles, hindering its local gang-suppression and other vital crime-fighting efforts.  Absent a clear, program-wide injunction against imposition of such conditions by DOJ through its administration of the Byrne JAG program, DOJ's unlawful actions will deprive local communities of criminal justice assistance to which they are statutorily entitled.  Because there are no material factual disputes and the City is entitled to judgment as a matter of law, the Court should grant partial summary judgment on Counts

1

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

One through Four, and permanently enjoin DOJ from imposing all of the immigration-related conditions it seeks to impose on the Byrne JAG program.  In the alternative, the Court should enter a preliminary injunction.

## II.   FACTUAL BACKGROUND

Given the Court's familiarity with the Byrne JAG program from earlier litigation, Los Angeles provides only a brief factual background here.  *See, e.g.*, Sept. 13 Order (granting Los Angeles' preliminary injunction against DOJ imposing conditions on FY 2017 Byrne JAG grants).

### A.   The Edward Byrne Memorial Justice Assistance Grant Program

The Bureau of Justice Assistance ("BJA"), a component of DOJ's Office of Justice Programs, administers and oversees the Byrne JAG program, a federal government grant program established by Congress to provide funds to "States and units of local government" for use by such localities to fund "additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice."  34 U.S.C. § 10152(a)(1); *see* Sept. 13 Order at 2.

Congress structured the Byrne JAG program as a formula grant, which means the funds "are not awarded at the discretion of a state or federal agency, but are awarded pursuant to a statutory formula."  Sept. 13 Order at 3 (quoting *City of Los Angeles v. McLaughlin*, 865 F.2d 1084, 1088 (9th Cir. 1989)).  Here, the "statutory formula requires the Attorney General to give 50% of available funds to each State in proportion to its population, with the remaining 50% to be given to each State in proportion to its violent crime rate."  *Id.* (citing 34 U.S.C. § 10156(a)).

Congress enumerated specific requirements to be imposed on award applicants. Pursuant to statute, each applicant must make certain certifications and assurances.  *See* 34 U.S.C. § 10153(a)(1)-(5).  For example, an applicant must certify that it will not use Byrne JAG funds to "supplant State or local funds," will "comply with all provisions of this part [*i.e.*, the JAG statute] and all other applicable Federal laws," and it must assure that, for each fiscal year, it will "maintain and report such data, records, and information

(programmatic and financial) as the Attorney General may reasonably require." *Id.* § 10153(a)(1), (4), (5). These congressionally mandated certifications and assurances all relate to the application or administration of the grant, or use of the grant funds.

### B.   Los Angeles Uses Byrne JAG Funding To Promote Critical Local Law Enforcement Work As Specified In Congress's Funding Statute

Los Angeles has applied for and received Byrne JAG funding each year from FY 2005 to FY 2016, with annual funding of upwards of $1 million. On October 4, 2018, Los Angeles received its FY 2017 Byrne JAG award document. Decl. of Jeff Gorell ¶ 4. Despite this Court's entry of a preliminary injunction prohibiting DOJ from imposing its unlawful immigration conditions, *see* Sept. 13 Order, DOJ has still included the unlawful conditions in Los Angeles's FY 2017 Byrne JAG document, Gorell Decl. ¶ 4.

Los Angeles uses Byrne JAG funds to implement its Community Law Enforcement and Recovery ("CLEAR") program, which combats violent crime in local communities and neighborhoods through efforts to: (1) reduce local gang activity and promote community recovery; (2) work closely with special local criminal investigative units; and (3) adopt an aggressive vertical prosecutorial program, including probation and parole officers, youth intervention organizations, and schools in the community. *Id.* ¶¶ 10-14. Byrne JAG funds help pay the salaries for personnel needed to make the CLEAR program a success: in 2014, for instance, CLEAR communities had 22 percent less gang crime over a three-year period than non-CLEAR communities. *Id.* ¶ 15.

Without Byrne JAG funding, Los Angeles would have fewer resources to support the CLEAR program. Those funds help ensure that CLEAR staff can continue to dedicate their work hours to the program. It is those resources and cross-agency collaboration—which Byrne JAG has funded in the past—that are so central to making the CLEAR program a success. Eliminating those funds would undo the good progress the City has made to date of reducing crime in high-crime local communities. *Id.* ¶¶ 17-21.

### C.     This Court Enjoined DOJ's Imposition Of Immigration Conditions On Local Law Enforcement Grants

This Court is familiar with DOJ's repeated efforts to impose unlawful immigration conditions on local criminal law enforcement grants.  Initially, President Trump issued Executive Order 13768 on January 25, 2017, directing the Attorney General and Secretary of Homeland Security to withhold funds from so-called "sanctuary jurisdictions."  That order was held unconstitutional by the Ninth Circuit.  *San Francisco v. Trump*, 897 F.3d 1225, 1245 (9th Cir. 2018).

Next, DOJ imposed three immigration-related conditions on FY 2017 Byrne JAG grants.  First, DOJ required jurisdictions to certify compliance with 8 U.S.C. § 1373 (the "Section 1373 Condition").  Under Section 1373, state and local governments may not "prohibit, or in any way restrict," their law enforcement officers from (1) "sending to, or receiving from" federal immigration officials "information regarding the citizenship or immigration status, lawful or unlawful, of any individual," and (2) "[m]aintaining such information" or "[e]xchanging such information with any other Federal, State or local government entity."  8 U.S.C. § 1373(a)-(b).  Three courts have already held that Section 1373 is unconstitutional, and therefore the Department cannot condition Byrne JAG funds on compliance with that statute.  *Philadelphia*, 309 F. Supp. 3d at 321, 331; *Chicago*, 2018 WL 3608564, at *13; *City & Cty. of San Francisco v. Sessions*, No. 3:17-cv-04642, Dkt. 145 at 23-32 (N.D. Cal. Oct. 5, 2018).

DOJ imposed the next two conditions on award recipients to require them to have in place a "local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice)" that ensures that federal agents are given (1) "access [to] a local-government . . . correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States" (the "2017 Access Condition"), and (2) "advance notice of the scheduled release date and

4

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE,APPLICATION FOR PRELIMINARY INJUNCTION

time for a particular alien" in detention "as early as practicable" (the "2017 Notice Condition").  Request for Judicial Notice ("RJN") Ex. E (Greenville Award) ¶ 56(1).

Every court to address the Notice and Access Conditions held that they violate the separation of powers.  This Court held that "the authority granted to the Attorney General within the Byrne JAG statute regarding distribution of funds is extremely limited and leaves little room for discretion," and "[t]he language of the statutes gives no indication that DOJ is authorized to add civil immigration conditions to those" conditions already in the statute.  Sept. 13 Order at 3.  This Court, along with others, rejected the Department's reliance on 34 U.S.C. § 10102(a)(6) as justifying the Conditions, because reading it "to authorize the Attorney General to impose conditions on all grants under the entire chapter contradicts the explicit grants of authority in other sections of the statute."  *Id.* at 4.

### D. DOJ Continues To Impose Unlawful Immigration Conditions on Local Criminal Justice Grants, Despite this Court's Earlier Order

Despite the clear judicial conclusion that DOJ could not impose immigration-related conditions on FY 2017 Byrne JAG awards, DOJ has re-imposed such conditions on FY 2018 awards.  In a transparent attempt to evade court rulings (including a ruling of this Court), DOJ has announced that it will impose substantively identical conditions, and even more aggressive immigration-related conditions.  DOJ now attempts to justify each condition as somehow required under one or more newly identified federal statutes.

DOJ announced these conditions on July 20, 2018, in its FY 2018 Byrne JAG Solicitation (the "Solicitation") issued by BJA.  RJN Ex. A.  The Solicitation includes two certifications that applicants are required to provide stating that the State or local government complies with seven immigration statutes that DOJ now interprets as imposing the conditions described below.  Solicitation at 36-37 (describing conditions), RJN Exs. C, D (certifications).  DOJ requires the chief legal officer of the locality to sign

and submit those certifications "in order to validly accept a [FY] 2018 JAG award." Solicitation at 1.

**The 1373 and 1644 Condition.**  As with the condition held unlawful by three district courts, DOJ is requiring local governmental entities who receive FY 2018 Byrne JAG funds to certify "compliance" with 8 U.S.C. § 1373.  RJN Ex. C (mandatory certification of compliance); *see Philadelphia*, 309 F. Supp. 3d at 331 (holding Section 1373 unconstitutional and not a valid Byrne JAG condition); *Chicago*, 2018 WL 3608564, at *13 (same); *San Francisco*, No. 3:17-cv-04642, Dkt. 145 at 32 (same); *see also United States v. California*, 314 F. Supp. 3d 1077, 1101 (E.D. Cal. 2018) (casting doubt on Section 1373's constitutionality).  DOJ also requires certification by the local governmental entity of compliance with 8 U.S.C. § 1644, which is similar to Section 1373, and provides that no State or local government may be prohibited or restricted "from sending to or receiving from the [Department of Homeland Security] information regarding the immigration status, lawful or unlawful, of an alien in the United States" (the "Section 1644 Condition").  RJN Ex. C (mandatory certification of compliance).

**The Notice and Access Conditions.**  DOJ's Solicitation also re-imposes the previously enjoined Notice and Access Conditions.  DOJ has made cosmetic changes to these conditions, attempting to ground them in various federal statutes, but there is no question that those statutes are not directed at States and localities.  DOJ simply declares that the failure by local governmental entities to provide the Notice and Access it demands would "impede" federal immigration authorities in exercising their own statutory authority.  The substance of the conditions remains the same.

Specifically, DOJ seeks to condition FY 2018 Byrne JAG funding on a local jurisdiction agreeing:

> "[n]ot to impede the exercise of the authority of the federal government under 8 U.S.C. § 12[2]6(a) & (c) (authorizing arrest and detention of certain aliens and providing that the federal government 'shall take into custody' certain criminal aliens 'when the alien is released') and 8 U.S.C. § 1231(a)(4)

6

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

(relating to removal from the United States of aliens after detention/confinement at the federal, state, and local level), specifically by requiring such recipients to provide (where feasible) at least 48 hours' advance notice to DHS [Department of Homeland Security] regarding the scheduled release date and time of an alien in the recipient's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act" ("Notice Condition"), and

"[n]ot to impede the exercise by DHS agents, 'anywhere in or outside the United States' (8 C.F.R. § 287.5(a)(1)), of their authority under 8 U.S.C. § 1357(a)(1) to 'interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States,' specifically by requiring such recipients to permit DHS agents to have access to any correctional facility in order to meet with an alien (or an individual believed to be an alien) and inquire as to his right to be or remain in the United States." ("*Access Condition*").

Solicitation at 36-37; *see also* RJN Ex. D ¶¶ 3, 6 (mandatory certification of compliance, citing 8 U.S.C. §§ 1226(a), (c), 1231(a), 1357(a)).

    **The "Harboring" Condition.**  DOJ's Solicitation requires the chief official and chief legal advisor of a State or local government who receives a FY 2018 Byrne JAG award to certify, under penalty of perjury, that the jurisdiction agrees:

"[n]ot to violate, or aid or abet any violation of, 8 U.S.C. § 1324(a) (forbidding any 'person,' in 'knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law,' to 'conceal, harbor, or shield from detection, or attempt to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation' or to 'engage in any conspiracy to commit any of the preceding acts' . . . 'or aid or abet the commission of any of the preceding acts').".

Solicitation at 36.  The certification requires that applicants not have "any law, rule, policy, or practice" that would "require or authorize the public disclosure of federal law enforcement information in order to conceal, harbor, or shield from detection fugitives from justice or aliens illegally in the United States."  RJN Ex. D ¶ 6.  Applicants must

7

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

certify that they understand that DOJ will require them "not to publicly disclose federal law enforcement information in an attempt to conceal, harbor, or shield certain individuals from detection, including in violation of 8 U.S.C. § 1324(a)." *Id.* ¶ 3 ("Harboring Condition").

DOJ's Harboring Condition was imposed against a backdrop of high-ranking federal officials threatening to arrest and prosecute local officials in jurisdictions deemed insufficiently cooperative with federal civil immigration enforcement.  In a recent Senate Committee hearing, Secretary of Homeland Security Kirstjen Nielsen confirmed that, at her department's request, DOJ is "exploring" such prosecution of local elected officials under 8 U.S.C. § 1324.[1]  Then-Acting Director of U.S. Immigration and Customs Enforcement Thomas Homan likewise urged DOJ to "file charges against the sanctuary cities [referring to criminal prosecution of local officials under Section 1324]," "hold back their funding," and "start charging some of these ['sanctuary' city] politicians with crimes."[2]

**The "Questionnaire" and 1366 Conditions.**  DOJ's Solicitation also requires every applicant for FY 2018 Byrne JAG funds to answer questions regarding the local governmental entity's own policies regarding communications with federal immigration authorities, specifically:

> (1) "Does your jurisdiction have any laws, policies, or practices related to whether, when, or how employees may communicate with DHS or ICE?"

> (2) "Is your jurisdiction subject to any laws from a superior political entity (e.g., a state law that binds a city) that meet the description in question 1?"

---

[1] RJN Ex. F (Testimony of Kirstjen Nielsen, U.S. Sec. of Homeland Sec., *Oversight of the United States Department of Homeland Security*, Hr'g Before the U.S. Senate Comm. on the Judiciary (Jan. 18, 2018)).

[2] RJN Ex. G (Brandon Conradis, *Trump ICE Pick: Politicians Who Run Sanctuary Cities Should Be Charged With Crimes*, THE HILL, Jan. 2, 2018).

Solicitation at 27-28; *see also id.* at 52 (mandatory certification).  If an applicant answers "yes" to either question, the applicant must provide a copy of each law or policy; describe each practice; and explain how the law, policy, or practice complies with Section 1373 ("Questionnaire Condition").  *Id.* at 27-28, 52.  DOJ requires that the responses "be provided by the applicant as part of the JAG application" and that an agency "will not be able to access award funds (and its award will include a condition that withholds funds) until it submits these responses."  *Id.* at 28.

DOJ's Solicitation also requires applicants to certify that they will not "impede the exercise by federal officers of authority relating to . . . 8 U.S.C. § 1366(1) or (3)."  RJN Ex. D ¶¶ 3, 6 ("1366 Condition").  Section 1366 states that "the Attorney General shall submit to the Committees on the Judiciary of the House of Representatives and of the Senate a report detailing--(1) the number of illegal aliens incarcerated in Federal and State prisons for having committed felonies, stating the number incarcerated for each type of offense . . . [and] (3) programs and plans underway in the Department of Justice to ensure the prompt removal from the United States of criminal aliens subject to removal . . . ."  DOJ views this Condition as supporting its Notice Condition.  RJN Ex. I ¶ 46.

Confirming its decision to impose all of the above conditions, DOJ has now begun disbursing FY 2018 Byrne JAG awards to States and localities, and has included the above conditions as award conditions.  The award documents expressly require compliance with the 1373 and 1644 Condition, RJN Ex. I ¶¶ 41-43, the Access Condition, *id.* ¶ 45 (citing 8 U.S.C. § 1357(a)), the Notice Condition, *id.* ¶ 46 (citing 8 U.S.C. §§ 1226, 1231, and 1366), the Harboring Condition, *id.* ¶ 44 (citing 8 U.S.C. 1324 and 18 U.S.C. §§ 1071 and 1072), and the Questionnaire Condition, *id.* ¶ 62.  The City refers to all of the above Conditions as the "Challenged Conditions."

### E.    Los Angeles Applies For FY 2018 Funding

In August 2018, Los Angeles timely applied for Byrne JAG funding.  Gorell Decl. ¶ 6.  An allocation list published by BJA indicated that Los Angeles is eligible to receive $2.2 million for this application cycle, with $1.8 million allocated directly to the City and

the remainder allocated to the County of Los Angeles as a sub-grantee.[3]  If not for DOJ's conditioning of Byrne JAG funding on compliance with the Challenged Conditions, Los Angeles would almost certainly receive Byrne JAG funds as it has in prior years, because it qualifies for funding under Congress's statutory formula.

The Los Angeles Police Department ("LAPD") permits "access to LAPD detention facilities to interview individual arrestees . . . consistent with California law which requires obtaining informed, written consent prior to any such interview."  Decl. of Arif Alikhan ¶ 22.  Absent such consent, "LAPD does not provide DHS or ICE personnel access to its facilities in order to interview that individual."  *Id.*  DOJ, however, has taken the position that the 2017 Access Condition, which is materially the same as the 2018 Access Condition, "require[s] allowing access . . . even if the inmate might decline to answer questions," which Los Angeles does not do.  Defs.' Mem. in Opp. to Pl.'s Mot. for Pre. Inj. at 32, No. 17-cv-03894 (filed E.D. Pa. Oct. 12, 2017), Dkt. 28.

In addition, Los Angeles has determined that it could not certify compliance with DOJ's Notice and Access Conditions without "a negative impact on the LAPD's relationship with the immigrant communities it polices, causing those communities to be less willing to report crimes and cooperate with criminal investigations, thus threatening the public safety of all who live and work in Los Angeles."  Alikhan Decl. ¶ 17.

Los Angeles also challenges the 1373 and 1644 Condition.  Although the City has explained to this Court that its policies are consistent with 8 U.S.C. § 1373, *see* Dkt. 83-1 at 24, No. 17-7215 (C.D. Cal.), DOJ has departed from the plain-text meaning of Section 1373 (and Section 1644) and adopted an aggressive, atextual reading.  *See California*, 314 F. Supp. 3d at 1102.  This extreme interpretation has already harmed Los Angeles, as DOJ delayed disbursing the City's FY 2017 Byrne JAG award pending a purported "review" of Los Angeles's compliance with Section 1373.  *See* Dkt. 86-3 ¶ 3, No. 17-7215 (C.D. Cal.) (Decl. of Marilynn Atsatt).  To avoid such harms with the FY 2018

---

[3] RJN Ex. H, Bureau of Justice Assistance, *2018 California Local JAG Allocations*.

Byrne JAG award, Los Angeles challenges the 1373 and 1644 Condition.  And because the Questionnaire Condition appears to be related to DOJ's enforcement of Sections 1373 and 1644, Los Angeles also challenges that Condition.

It is not entirely clear the types of State and local policies DOJ means to address with the Harboring Condition, but in light of the threats by high-ranking Administration officials to prosecute state and local officials for "harboring" by declining to participate in federal immigration enforcement, the City challenges this Condition as well.

## III.   <u>ARGUMENT</u>

A court may grant a permanent injunction if the moving party demonstrates success on the merits and:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co v. Geertson Seed Farms*, 561 U.S. 139, 157-58 (2010).  Because Los Angeles meets all these elements, the Court should permanently—or, in the alternative, preliminarily—enjoin all Defendants from imposing the Challenged Conditions and withholding or delaying FY 2018 Byrne JAG awards.  *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011) ("[T]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

### A.   **The Challenged Conditions Are Unlawful**

#### 1.   **The Challenged Conditions Are *Ultra Vires***

An agency "has no power to act . . . unless and until Congress confers power upon it."  *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  When agencies "act improperly . . . what they do is ultra vires."  *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).

11

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE,APPLICATION FOR PRELIMINARY INJUNCTION

### (a) This Court's September 13 Order Conclusively Establishes That The 2018 Versions Of DOJ's Conditions Are Not Authorized By Statute

This Court has already held that "[t]he language of the [Byrne JAG] statutes gives no indication that DOJ is authorized to add civil immigration conditions." Sept. 13 Order, at 3. The Court further held that 34 U.S.C. § 10102(a)(6), the only statutory authority DOJ had identified in support of its immigration conditions, did not in fact authorize them. *Id.*; *see also Chicago*, 888 F.3d at 277.

DOJ has now made cosmetic changes to the Notice and Access Conditions, and added new immigration related conditions with the same purpose of unlawfully pressuring States and localities to participate in federal civil immigration enforcement. This end-run around the Court's ruling fails. For the same reasons this Court articulated, DOJ's renewed attempt "to add civil immigration conditions" to the Byrne JAG Program (Sept. 13 Order, at 3), is inconsistent with the text, structure, and purpose of the statute.

Moreover, although the Court did not need to reach this issue in considering the FY 2017 Conditions, the Challenged Conditions also violate 34 U.S.C. § 10228. Congress specifically directed that the Byrne JAG statute, among others, not be construed to authorize any federal agency or officer "to exercise any direction, supervision, or control over any police force or any other criminal justice agency of any State or any political subdivision thereof." 34 U.S.C. § 10228(a). The Challenged Conditions attempt to do just that by exercising direction, supervision, and control over Los Angeles and the operation of its police department and detention facilities.

### (b) The Challenged Conditions Are Not Authorized As Compliance With "Applicable Federal Laws" Under DOJ's New Argument

Although the FY 2018 version of DOJ's immigration conditions are not new in substance, DOJ has created a new argument to attempt to recast their unlawful immigration conditions as if they are required by federal immigration statutes and to demand certification of compliance with those statutes. *See* RJN Exs. C, D. DOJ's apparent purpose is to invoke 34 U.S.C. § 10153(a)(5)(D), which provides that an

12

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

applicant must include in its Byrne JAG application a "certification . . . that . . . (D) the applicant will comply with all provisions of this part and all other applicable Federal laws." To be an "applicable Federal law" under Section 10153(a)(5)(D), however, a statute must satisfy at least three requirements, which are not met here.

*First*, the law must be "applicable" to federal grants. *See San Francisco*, No. 3:17-cv-04642, Dkt. 145 at 32 ("The statutory structure suggests 'applicable' was intended to refer to laws related to grant applications."). DOJ appears to read Section 10153(a)(5)(D) as without limit, requiring the applicant to certify compliance with *any* federal law of the agency's choosing. That would render the word "applicable" wholly superfluous. *See City of Los Angeles v. Sessions*, 293 F. Supp. 3d 1087, 1097 (C.D. Cal. 2018) (rejecting construction that would render a provision superfluous). Moreover, the phrase "other applicable Federal laws" immediately follows a reference to "all provisions of this part." Because the "provisions of this part" relate only to a federal grant (the Byrne JAG grant), the residual clause "all *other* applicable Federal laws" must be understood to refer to other laws of the same type, *i.e.*, those relating to federal grants. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-115 (2001) ("[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."); *see also* Black's Law Dictionary (10th ed. 2014) (defining "applicable" as "affecting or relating to a particular person, group, or situation; having direct relevance"). There are various statutes, located outside the part of the U.S. Code governing the Byrne JAG program, that are applicable to federal grants. *See, e.g.*, 42 U.S.C. § 2000d (prohibiting race, color, or national origin discrimination in "any program or activity receiving Federal financial assistance"). Those are the types of federal laws to which the word "applicable" naturally refers, and so those are the types of laws for which Byrne JAG applicants must certify compliance.

*Second*, the phrase "other applicable Federal laws" in Section 10153(a)(5)(D) can refer only to a law that applies to the grant applicant. Specifically, Byrne JAG grant

applications can be made only by "the chief executive officer of a State or unit of local government," 34 U.S.C. § 10153(a), and the certification must be executed by a state or local government official about the governmental entity it represents complying with such laws, *id.* § 10153(a)(5)(D). Federal statutes that Congress did not direct at States and local governments, and that do not impose any obligation on States and local governments, cannot be "applicable" to a State or local government grant applicant.

*Third*, the law must be constitutional. A law that is not constitutional is "a legal nullity," *Branch v. Smith*, 538 U.S. 254, 281 (2003), and thus cannot be an "applicable Federal law" under Section 10153(a)(5)(D). "[N]o matter the breadth of [section 10153(a)(5)(D)], it will never capture an unconstitutional statute." *Chicago*, 2018 WL 3608564, at *13; *see also San Francisco*, No. 3:17-cv-04642, Dkt. 145 at 30-31.

Each of the Challenged Conditions fails to meet the requirements to be treated as an "applicable Federal law[]" under 34 U.S.C. § 10153(a)(5)(D).

### (1)   The Notice and Access Conditions

DOJ has flouted the legal rationale of this Court's September 13 Order by adhering to, for a new fiscal year, the Notice and Access Conditions that are substantively the same as those that this Court enjoined for FY 2017. DOJ is again imposing these Conditions as a means to require local governments' law enforcement and detention facilities to adjust their resources and practices (1) to provide 48 hours' notice (where feasible) to federal immigration authorities, upon request from DHS, before releasing certain aliens, and (2) to allow federal immigration officials access to their local detention facilities to interview certain detainees. That is what this Court has already enjoined. *See* Sept. 13 Order.

Only after multiple courts held unlawful DOJ's imposition of the Notice and Access Conditions for FY 2017 Byrne JAG awards did DOJ identify an assortment of statutory provisions that it now contends *require* States and local governments to provide the same Notice and Access. DOJ now maintains that States and local governments must provide notice to DHS of release of certain aliens in order to comply with 8 U.S.C.

14

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

§ 1226(a), (c) and 8 U.S.C. § 1231(a) and certification of such "compliance" can be required to receive their Byrne JAG funding.  *See* RJN Ex. D ¶¶ 3, 6.

But Section 1226(a) and (c) speak to the authority of the Attorney General and provide that he may issue warrants for, and take into custody, certain aliens.  *See* 8 U.S.C. § 1226(a), (c).  Section 1226(a) and (c) are not directed to States or local governments.

Section 1231(a) also speaks to the authority of the Attorney General to remove and detain certain aliens.  *See id.* § 1231(a).  That statute also is not directed to States or local governments.

None of these statutes create legal requirements with which States and local governments were directed by Congress to comply.  Moreover, none of these statutes concern federal grant recipients.  For these reasons, these laws are not "applicable Federal laws" for purposes of Section 10153(a)(5)(D) with which DOJ can demand "compliance" as a condition of receiving Byrne JAG funding.  *See supra* 12-14.

DOJ also contends that States and local governments cannot receive Byrne JAG funding unless they provide DHS with access to their detention facilities in order to comply with 8 U.S.C. § 1357(a)(1) and certify to such "compliance" by the State or local government.  But Section 1357(a) speaks to the powers of federal immigration officers and employees, not States or local governments.  Subsection (a) provides that such federal officials "shall have power without warrant-- (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States."  Section 1357(a) did not create a federal legal requirement with which States and local governments were directed by Congress to comply.  And it does not concern federal grants.  For both reasons, Section 1357(a) is not an "applicable Federal law" for purposes of Section 10153(a)(5)(D) with which DOJ can demand certifications of "compliance" from States and local governments as a condition for receiving their Byrne JAG funding.

DOJ attempts to expand Section 10153(a)(5)(D) beyond its text and purpose to argue that States and local governments must comply with its Notice and Access Conditions in order to receive their Byrne JAG funding because otherwise federal

15

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

authority under those other unrelated immigration statutes would be impeded. *See* Solicitation at 36-37; RJN Ex. D ¶¶ 3, 6. That is doubly wrong. First, as noted above, the immigration statutes now invoked by DOJ plainly impose no obligation on States or local governments. It thus makes no sense to say that by failing to provide DHS with Notice and Access, States and localities are not in "compliance" with "applicable Federal laws." 34 U.S.C. § 10153(a)(5)(D).[4]

Second, DOJ's premise is mistaken: as one court recently held in response to a similar argument by DOJ, "refusing to help is not the same as impeding." *California*, 314 F. Supp. 3d at 1104. As the Seventh Circuit explained concerning the materially identical 2017 Notice and Access Conditions, "nothing in this case involves any affirmative interference with federal law enforcement at all, nor is there any interference whatsoever with federal immigration authorities." *Chicago*, 888 F.3d at 282. Los Angeles has made the policy decision to focus its limited resources on local law enforcement priorities, such as community crime suppression, combatting local gang violence, and the day-to-day management of its jails. The mere fact that Los Angeles declines to participate in the federal government's preferred civil immigration enforcement efforts does not "impede" federal authority in any way.

### (2)   The 1373 And 1644 Condition

Under Section 1373(a), federal, state, and local governments and officials "may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from" federal immigration officials "information regarding the citizenship or immigration status, lawful or unlawful, of any individual." Under Section 1373(b), no person or agency "may prohibit, or in any way restrict," a federal, state or local

---

[4] If the statutes could somehow be read as imposing affirmative obligations on States and localities to participate in immigration enforcement, they would be unconstitutional. *See infra* 17-18 (discussing the Tenth Amendment anti-commandeering principle).

government from "[m]aintaining such information" or "[e]xchanging such information with any other Federal, State, or local government entity."

Section 1644 provides that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."

Sections 1373 and 1644 are not "applicable Federal laws" within the meaning of Section 10153(a)(5)(D) such that certification of compliance with them can be required by States and local governments as a condition for Byrne JAG funds. First, neither statute concerns federal grants and therefore they are not "applicable" to the grant awards. *See supra* 12-14. Moreover, they are unconstitutional as applied to States and local governments under the Tenth Amendment's anti-commandeering principle. Three courts already have so held.[5] *Philadelphia*, 309 F. Supp. 3d at 329 (Section 1373 "regulate[s] state and local governmental entities and officials, which is fatal to [its] constitutionality under the Tenth Amendment."); *San Francisco*, No. 3:17-cv-04642, Dkt. 145 at 30 (Section 1373 "require[s] local policymakers to stand aside and allow the federal government to conscript the time and cooperation of local employees." (quoting *Chicago*, 2018 WL 3608564, at *11)).

Under the Tenth Amendment, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Because the "Constitution confers on Congress not plenary legislative power but only certain enumerated powers, . . . all other legislative power is reserved for the States, as the Tenth Amendment confirms." *Murphy v. NCAA*, 138 S. Ct. 1461, 1476 (2018). Congress's enumerated powers do not include "the power to issue direct orders to the governments of the States." *Id.*

---

[5] The same analysis applies to Section 1644 because it also prohibits States and localities from enacting laws governing the duties of state and local law enforcement officers.

17

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

This "anticommandeering principle is important" for at least three reasons.  *Id.* at 1477.  First, it "serves as 'one of the Constitution's structural protections of liberty.'" *Murphy*, 138 S. Ct. at 1477 (quoting *Printz*, 521 U.S. at 921).  Second, it "promotes political accountability," which is weakened "if a State imposes regulations only because it has been commanded to do so by Congress."  *Id.*  Finally, "the anticommandeering principle prevents Congress from shifting the costs of regulation to the States."  *Id.*

This constitutional safeguard is violated by Section 1373 because Section 1373 "issue[s] direct orders to state legislatures" (and local governments) by dictating what laws the legislative bodies of States (and localities) cannot enact.  *Id.* at 1478.  And Sections 1373 and 1644 strike at the heart of state and local sovereignty—they prevent state and local government executive authorities from exercising their sovereign control over their law enforcement officers.  *See Chicago*, 2018 WL 3608564, *8 ("Section 1373 supplants local control of local officers; the statute precludes Chicago, and localities like it, from limiting the amount of paid time its employees use to communicate with INS.").  In fact, "Section 1373 redistributes local decision-making power by stripping it from local policymakers and installing it instead in line-level employees who may decide whether or not to communicate with INS," which "effects a federally-imposed restructuring of power within state government."  *Id.*

That Section 1373 prohibits States and local governments from acting rather than requiring them to act does not change the constitutional analysis, because "[t]he basic principle—that Congress cannot issue direct orders to state legislatures—applies in either event."  *See Murphy*, 138 S. Ct. at 1478.  Because Sections 1373 and 1644 are unconstitutional as applied to States and local governments, they are not "applicable Federal laws" within the meaning of Section 10153(a)(5)(D).  *See supra* 12-14.

### (3)    The Harboring Condition

DOJ also attempts to invoke 8 U.S.C. § 1324(a) as an "applicable Federal law[]" under Section 10153(a)(5)(D) so that DOJ can require, as a condition of Byrne JAG funding, that States and local governments "not . . . publicly disclose federal law

enforcement information in an attempt to conceal, harbor, or shield certain individuals from detection, including in violation of 8 U.S.C. § 1324(a)." RJN Ex. D ¶ 3; *see id.* ¶ 6.

But Section 1324(a) is another immigration provision and it authorizes criminal punishment for "any person" who commits or attempts to commit a variety of acts relating to harboring an alien who is in the United States "in violation of law." *See* 8 U.S.C. § 1324(a)(1)(A); *see also* 18 U.S.C. § 1071 (harboring of fugitives). Specifically, Section 1324(a)(1)(A)(iii) authorizes criminal punishment for a person who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, *conceals, harbors, or shields from detection*, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation." (emphasis added). DOJ's certification copies the emphasized language from Section 1324(a)(1)(A)(iii). *See* RJN Ex. D ¶¶ 3, 6.

Section 1324(a) is not an "applicable Federal law[]" for purposes of Section 10153(a)(5)(D) for multiple reasons. The first is that it, like the other immigration statutes that DOJ invokes, is not "applicable" to federal grants. *See supra* 12-14.

In addition, the provisions in Section 1324(a) are not directed at States or local governments. They apply to any "person," which the INA defines as an "individual or an organization." 8 U.S.C. § 1101(b)(3). An "organization" includes corporate entities, not States or local governments. *See id.* § 1101(a)(28) (defining "organization"); *cf. id.* § 1101(a)(36) (defining "State"). And it cannot be disputed that authorizing criminal punishment of state and local officials for their decisions about public safety and local resources "would upset the usual constitutional balance of federal and state powers," necessitating a clear statement from Congress to "assure[] that the legislature has in fact faced, and intended to bring into issue, the critical matters involved." *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991). Section 1324(a) contains no such clear statement.

Contrary to the threats from high-ranking Administration officials about using the "harboring" statute to prosecute state and local officials who decline to participate in immigration enforcement, Section 1324(a)—even if it could apply to States and local

governments—does not include an obligation to provide affirmative assistance to the federal government.  Moreover, an interpretation of Section 1324(a) that would apply to States and local governments and subject them to *criminal* punishment would clearly violate the Tenth Amendment.  *See supra* 16-18.

Therefore, Section 10153(a)(5)(D) does not authorize DOJ to require States and local governments to certify that they will not publicly disclose "federal law enforcement information" in violation of Section 1324(a).[6]

### (4)   The Questionnaire and 1366 Conditions

DOJ does not attempt to justify, as required by federal law under Section 10153(a)(5)(D), its imposition of the Questionnaire Condition to require States and local governments to answer various questions about the entity's communication policies with federal immigration authorities.  To the extent DOJ invokes Section 10153(a)(4), that too would be misplaced.  Section 10153(a)(4) requires each application to include "[a]n assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require."  Congress thus expressly limited the information that the Attorney General could require of States and local governments to *programmatic* and *financial* information.  The Questionnaire Condition does not concern programmatic or financial information.  Instead, the Condition requires jurisdictions to provide information about their "laws, policies, or practices related to whether, when, or how employees may communicate with DHS or ICE" and to explain how those laws, policies, and practices "comply with section 1373."  Solicitation at 52.

DOJ also requires States and local governments to certify that they will not "impede" the Attorney General's authority under 8 U.S.C. § 1366(1) and (3).  Those provisions require the Attorney General to submit various reports to Congress.  DOJ's Solicitation does not explain how those provisions require States and localities to do

---

[6] To the extent DOJ purports to rely on 18 U.S.C. §§ 1071-72, a similar analysis applies.

something with which they could certify compliance. In any event, those provisions do not concern federal grants, and are not directed to States and local governments.

### 2.  The Challenged Conditions Violate the Spending Clause

Los Angeles is likely to succeed on the merits not only because the Challenged Conditions are *ultra vires* as set forth above, but also because the Challenged Conditions violate the Spending Clause of the Constitution. U.S. Const. art. I, § 8, cl. 1. Under the Spending Clause, Congress's power to condition federal funding for States and local governments is subject to certain restrictions. *South Dakota v. Dole*, 483 U.S. 203, 207-09 (1987). The conditions must, *inter alia*, be unambiguous and "reasonably related to the articulated goal" of the grant program. *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989). The Challenged Conditions are neither.

The Challenged Conditions are far from unambiguous as demonstrated by the statutory analyses above that establish that the various immigration statutes invoked by DOJ are not even directed to States and local governments, so that how to certify "compliance" by States and local governments is far from clear. Moreover, it is not clear what types of state and local laws and policies DOJ attempts to address with its Harboring Condition.

The Challenged Conditions are not "reasonably related to the articulated goal" of the Byrne JAG program because Congress established the Byrne JAG program to fund formula grants for local criminal justice. *See* 34 U.S.C. § 10152(a)(1). Indeed, Congress created the Byrne JAG program to give States and local governments "more flexibility to spend money for programs that work for them rather than to impose a 'one size fits all' solution." H.R. Rep. No. 109-233, at 89. It is "difficult to discern" any reasonable relationship between compelling States and local governments to participate in *federal civil* immigration and Congress's clearly-articulated goal of promoting *local criminal* justice programs. *See Philadelphia*, 280 F. Supp. 3d at 643; *see* No. 17-cv-7215-R-JC, Dkt. 83-1 at 18-20.

21

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

### 3. The Challenged Conditions Violate the Administrative Procedure Act

Under the APA, agency actions must be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). DOJ's imposition of the Challenged Conditions as a condition on States and local governments receiving their Byrne JAG funding is "not in accordance with law," *see supra* Section III.A.1-2, and is arbitrary and capricious.[7]

To survive arbitrary-and-capricious review, federal agencies must engage in "reasoned decisionmaking," *Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir. 2000), meaning they "must examine the relevant data and articulate a satisfactory explanation for [their] actions including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).

DOJ has not conducted a "reasoned evaluation" or "articulate[d] a satisfactory explanation" for its re-imposition of immigration-related conditions on local law enforcement funding. DOJ adopted the Challenged Conditions with "no evidence of record," and without basing its conclusion "on any findings or data." *Los Angeles*, 293 F. Supp. 3d at 1099. In fact, DOJ has offered *no reasoning* whatsoever for its imposition of the Challenged Conditions on States and local governments.

### B. Los Angeles Will Suffer Irreparable Injury Absent An Injunction

Los Angeles will be irreparably harmed absent injunctive relief by this Court to

---

[7] DOJ's imposition of the Challenged Conditions on FY 2018 grants is "final agency action." As with the FY 2017 grants, "the imposition of these Conditions is neither tentative nor interlocutory in nature," and "legal consequences clearly flow from the imposition of the Conditions," in that Los Angeles must "choose between accepting the award—to which it is statutorily entitled—with the Conditions or forgoing the award in favor of maintaining the City's policy preferences." No. 17-7215, Dkt. 94 at 3 (C.D. Cal. Sept. 17, 2018). To accept the FY 2018 award, applicants "must submit[] the specific certifications regarding compliance," which contain the Challenged Conditions. Solicitation at 1. Confirming the finality of its decision, DOJ has included the Challenged Conditions when disbursing FY 2018 awards. *See* RJN I ¶¶ 41-46, 62.

22

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

preclude the Department of Justice from imposing the Challenged Conditions.  As this Court aptly summarized, DOJ's imposition of the Challenged Conditions puts Los Angeles to "an impossible choice": "either it must certify compliance with unconstitutional and unlawful directives that impinge on the City's sovereignty, damage community trust, and harm public safety, or it will lose congressionally authorized Byrne JAG funding." Sept. 13 Order, at 4.  That alone satisfies the test for demonstrating irreparable harm and cannot be remedied through monetary damages.  *See id.*

In addition, Los Angeles suffers irreparable harm from DOJ's imposition of the Challenged Conditions because the City will be "barred from receiving a funding opportunity which it has been, and otherwise would be, entitled to based on Congress' statutory formula." *Id.*  Given the formula structure, once Byrne JAG FY 2018 funds are allocated to other jurisdictions, Los Angeles may never be able to reclaim its share.  *See Planned Parenthood Arizona Inc. v. Betlach*, 727 F.3d 960, 975 (9th Cir. 2013) (granting permanent injunction against *ultra vires* condition on Medicaid reimbursement).

Finally, because DOJ's conditioning Los Angeles's FY 2018 Byrne JAG award on the unlawful Challenged Conditions violates the separation of powers and the Spending Clause for the reasons described above, the City suffers constitutional harm in a manner that "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017) (separation of powers violation is "irreparable harm").

## C.   The Balance Of Equities And The Public Interest Weigh Heavily In Favor Of The Requested Injunction

The balance of equities and public interest factors merge when the federal government is a party.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  Denying injunctive relief "would cause substantial hardship" to Los Angeles by forcing it to choose between "acceding to DOJ's unlawful conditions or being deprived of significant funding needed for its local law enforcement efforts." Sept. 13 Order, at 5.  And "the public interest is better served if the City is not forced to choose between foregoing the

Byrne JAG grant funds and losing its rapport with the immigrant community." *Id.* Furthermore, it is "always in the public's interest" to issue an injunction to "prevent the violation of a party's constitutional rights," as would occur here if the conditions were allowed to stand. *Id.* (quoting *Melendres*, 695 F.3d at 1002).

In contrast to the material hardship the City will suffer without an injunction—and the significant public interest served by imposing one—Defendants have no countervailing interest in pressing forward with their unlawful conditions. *See id.*

### D.   The Court Should Issue A Program-Wide Injunction

This Court has "considerable discretion in ordering an appropriate equitable remedy," *San Francisco*, 897 F.3d at 1245, and "[t]here is no general requirement that an injunction affect only the parties in the suit," *Bresgal v. Brock*, 843 F.2d 1163, 1169-70 (9th Cir. 1987). Here, the appropriate remedy is to set aside DOJ's imposition of the Challenged Conditions and enjoin Defendants from imposing them.

Program-wide relief is necessary because Byrne JAG awards are interconnected. Byrne JAG funds come from a single pool of appropriated money, and the statutory formula establishes each eligible applicant's award as a share of the "total amount appropriated." *See* 34 U.S.C. § 10156(a)(1). Each jurisdiction's award amount is thus inextricably tied to the number of jurisdictions eligible for funds. Because DOJ's imposition of the Challenged Conditions will substantially impact the number of eligible jurisdictions, the lawfulness of DOJ's action affects the size of all awards. Indeed, the statute specifically contemplates the reallocation of awarded funds to other applicants in certain circumstances. *See id.* § 10156(f). It would be chaotic, inefficient, and unworkable to require piecemeal litigation of the Challenged Conditions, leaving grantees in a constant state of flux as to the size of their award as the Conditions are invalidated or upheld case-by-case. *See Washington v. Trump*, 847 F.3d 1151, 1166 (9th Cir. 2017) (no workable alternative to program-wide relief). Recognizing this reality, the Ninth Circuit recently suggested the appropriateness of a program-wide injunction for the

24

CITY OF LOS ANGELES' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, APPLICATION FOR PRELIMINARY INJUNCTION

Byrne JAG program, "because the statute 'interconnects' all recipients of Byrne JAG grants." *San Francisco*, 897 F.3d at 1244 (quoting *Chicago*, 888 F.3d at 292-93).[8]

A program-wide injunction is also appropriate because this case is a facial challenge, the legal issues will not vary from jurisdiction-to-jurisdiction, and the challenged action equally harms similarly situated States and local governments. *See Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (leaving in place injunction applicable nationwide "with respect to respondents and those similarly situated"). Further, program-wide relief is "compelled" because DOJ's imposition of the Challenged Conditions is contrary to law (as well as arbitrary and capricious) under the APA. *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007)*, aff'd in part, rev'd in part on other grounds by Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ("nationwide injunction . . . is compelled by the text of the Administrative Procedure Act," because unlawful agency action must be "set aside," 5 U.S.C. § 706(2)(A)); *see also Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("ordinary result" is that unlawful agency action is "vacated," not that its "application to the individual petitioners is proscribed").

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment on Counts One through Four and enter a permanent injunction preventing Defendants from conditioning, withholding, or delaying any FY 2018 Byrne JAG awards on the basis of the Challenged Conditions. In the alternative, the Court should enter a preliminary injunction preventing Defendants from conditioning, withholding, or delaying any FY 2018 Byrne JAG awards on the basis of the Challenged Conditions.

---

[8] Notably, although the Seventh Circuit vacated the scope-of-injunction portion of *Chicago* to consider the issue *en banc*, the Ninth Circuit subsequently favorably cited that decision. Moreover, the Ninth Circuit distinguished the "interconnected" Byrne JAG program from the case before it, where the record was "not sufficiently developed on the nationwide impact of the Executive Order." *San Francisco*, 897 F.3d at 1244.

Dated: October 5, 2018

Respectfully Submitted,

By:

MICHAEL N. FEUER
City Attorney

MITCHELL A. KAMIN
NEEMA T. SAHNI
Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643

DAVID M. ZIONTS, *pro hac vice*
IVANO M. VENTRESCA, *pro hac vice*
BENJAMIN L. CAVATARO, *pro hac vice*
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001

JAMES P. CLARK
Chief Deputy City Attorney
LEELA A. KAPUR
Executive Assistant City Attorney
VALERIE L. FLORES
Managing Senior Assistant City Attorney
MICHAEL DUNDAS
Deputy City Attorney
DANIA MINASSIAN
STEVEN H. HONG
200 North Main Street, City Hall East Room 700
Los Angeles, California 90012
Telephone: (213) 978-8344
Facsimile: (213) 978-8312

*Attorneys for Plaintiff*
*City of Los Angeles*