1

2

3

4

5

6

7

8

9                         UNITED STATES DISTRICT COURT

10                       CENTRAL DISTRICT OF CALIFORNIA

11

12  CITY OF LOS ANGELES,                    )   CASE NO. CV 18-7347-R
                                            )
13                      Plaintiff,          )   ORDER GRANTING PLAINTIFF'S
                                            )   MOTION FOR PARTIAL SUMMARY
14          v.                              )   JUDGMENT AND DENYING
                                            )   DEFENDANTS' MOTION FOR PARTIAL
15  JEFFERSON B. SESSIONS III; et al.,      )   DISMISSAL OR PARTIAL SUMMARY
                                            )   JUDGMENT
16                      Defendants.         )
                                            )
17                                          )

18          Before the Court is Plaintiff's Motion for Partial Summary Judgment as to Counts One,

19  Two, Three, and Four of Plaintiff's Complaint, filed on October 5, 2018, and Defendants' Motion

20  for Partial Dismissal or Partial Summary Judgment, filed on November 13, 2018.  (Dkts. 41, 49).

21  Having been briefed by both parties, this Court took the matters under submission on January 2,

22  2019.

23          The two federal grants at issue here are (1) the Edward Byrne Memorial Justice Assistance

24  Grant ("Byrne JAG") Program, and (2) a grant authorized by the Juvenile Justice and Delinquency

25  Prevention Act of 1974 ("Juvenile Justice Act"), also referred to as the "Gang Suppression Grant

26  Program."  The Byrne JAG grant supports state and local law enforcement efforts by providing

27  additional funds for personnel, equipment, training, and other criminal justice needs.  34 U.S.C. §

28  10152.  The Byrne JAG grant is a formula grant, meaning the funds are awarded according to a

JS-6

1  formula provided by statute based on the state's population and rate of violent crime.  34 U.S.C. §

2  10156.  Plaintiff City of Los Angeles ("Los Angeles") has been a recipient of the Byrne JAG grant

3  every year since 1997, except 2017 and 2018, and each year has received more than $1 million in

4  funding.  DOJ has imposed five conditions on both of these fiscal year 2018 grants.  The first two

5  conditions, referred to as the "Notice" and "Access" Conditions, are substantively identical to

6  those previously enjoined by this Court in the case concerning the fiscal year 2017 Byrne JAG

7  awards.  These two conditions provide that the Department will only provide Byrne JAG grants to

8  cities and states that comply with federal law, allow federal immigration access to detention

9  facilities ("Access Condition"), and provide 40 hours' notice before they release an illegal alien

10  wanted by federal authorities ("Notice Condition").  Los Angeles has not changed its policies and

11  operations, and as a result has not received Byrne JAG funding for the 2018 fiscal year.  The third

12  Condition, referred to as the "1373 and 1644 Condition" requires recipients to certify compliance

13  with 8 U.S.C. §§ 1373 and 1644.  The final two conditions require the local governments that

14  receive the above mentioned federal grants to (1) certify "not to publicly disclose federal law

15  enforcement information in an attempt to conceal, harbor, or shield certain individuals from

16  detection, whether or not in violation of 8 U.S.C. § 1324(a) (the "Harboring Condition"); and (2)

17  answer a DOJ questionnaire regarding the local governmental entity's policies on communication

18  with federal immigration authorities and certify that the entity will not impede the Attorney

19  General's reporting requirements under 8 U.S.C. § 1366 ("Questionnaire and 1366 Condition").

20  Combined, this Court will refer to all conditions above as "the Conditions."   Now before this

21  Court, Plaintiff moves for Partial Summary Judgment as to Counts One, Two, Three, and Four of

22  its Complaint, while Defendant moves for Partial Dismissal or Partial Summary Judgment.

23       Summary judgment is appropriate where there is no genuine issue of material fact and the

24  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

25  *Catrett*, 477 U.S. 317, 330 (1986).  Partial summary judgment may be granted on particular

26  claims.  Fed. R. Civ. P. 56(a).

27  **Justiciability**

28       Defendants argue in their motion that Los Angeles lacks standing to challenge the

1   Conditions that DOJ has imposed on the 2018 Gang Suppression Grant.  Article III of the

2   Constitution allows federal courts to adjudicate only live cases and controversies.  Under this

3   requirement, a plaintiff must have "standing" to sue for relief.  The elements of standing are (1)

4   injury in fact, (2) causation, and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

5   560-61 (1992).  To establish standing to seek equitable relief, the plaintiff must also show a

6   likelihood of future injury.  *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983).  "The existence of

7   standing turns on the facts as they existed at the time the plaintiff filed the complaint."  *Skaff v.*

8   *Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).

9        A grant competitor may suffer "competitive injury" for purposes of standing.  "[W]hen

10  challenged agency conduct allegedly renders a [competitor] unable to fairly compete for some

11  benefit, that [competitor] has suffered a sufficient 'injury in fact' and has standing."  *Preston v.*

12  *Heckler*, 734 F.2d 1359, 1365 (9th Cir. 1984); *see also Int'l Bhd. of Teamsters v. U.S. Dep't of*

13  *Transp.*, 861 F.3d 944, 950 (9th Cir. 2017) ("[E]conomic actors suffer an injury in fact when

14  agencies lift regulatory restrictions on their competitors or otherwise allow increased competition

15  against them….  This doctrine of 'competitor standing' is grounded in the basic law of economics

16  that increased competition leads to actual injury.").  The grant competitor is not required to show

17  that it would have received the grant but for the disadvantage it faced.  Rather, "the 'injury in fact'

18  is the inability to compete on an equal footing in the bidding process…."  *Ne. Fla. Chapter of*

19  *Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993).

20       DOJ challenges Los Angeles' standing on the basis of injury-in-fact, alleging that because

21  the Gang Suppression Grant is a discretionary program with limited funds, it is unknown whether

22  Los Angeles will be chosen to receive an award, and thus, its injury is speculative.  However, this

23  Court is not persuaded by such an argument.  In order to have standing, Los Angeles need only

24  seek and be qualified to receive the grant funds at issue.  *See DKT Mem'l Fund, Ltd. v. Agency for*

25  *Int'l Dev.*, 810 F.2d 1236, 1238 (D.C. Cir. 1987).  Los Angeles promptly applied for funding and

26  alleged that it will use the funds to implement a long-term project falling within the scope of the

27  grant's purpose.  Los Angeles has demonstrated that it has sought funds and is qualified to receive

28  such grant funds. It need not also demonstrate that it is certain to receive funding.  Thus, Los

1    Angeles has standing to bring suit based on competitive injury.

2    **Count One (Ultra Vires Agency Action and Violation of Separation of Powers)**

3    The City of Los Angeles moves for summary judgment on Count One claiming that the

4    Conditions imposed are ultra vires agency action and a violation of separation of powers.

5    An agency "has no power to act…unless and until Congress confers power upon

6    it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  When agencies "act improperly,

7    no less than when they act beyond their jurisdiction, what they do is ultra vires." *City of Arlington*

8    *v. FCC*, 569 U.S. 290, 297 (2013).  While "Congress may attach conditions on the receipt of

9    federal funds," a federal agency may not do so without Congress' permission. *South Dakota v.*

10    *Dole*, 483 U.S. 203, 206 (1987); *see also City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 940

11    (N.D. Ill. 2017) ("Whether the new conditions on the…grant are proper depends on whether

12    Congress conferred authority on the Attorney General to impose them.").

13    "If Congress intends to alter the usual constitutional balance between the States and the

14    Federal Government, it must make its intention to do so unmistakably clear in the language of the

15    statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).  Although *Gregory* did not address this

16    constitutional balance in the grant context, the Court explained that this clear rule "applie[s] in

17    other contexts," including any "traditionally sensitive areas, such as legislation affecting the

18    federal balance." *Id.* at 461.  The Fourth Circuit, citing Supreme Court precedent, extended the

19    clear statement rule specifically to federal grants. *Com. of Va., Dep't of Educ. v. Riley*, 106 F.3d

20    559, 566 (4th Cir. 1997) (en banc).  The *Riley* Court emphasized the importance of such a rule

21    where the grant condition required the surrender of a critical power reserved to the states by the

22    Tenth Amendment. *Id.*  The Supreme Court has emphasized that the police power is one such

23    critical state function. *See, e.g., Gonzales v. Oregon*, 546 U.S. 243, 270 (2006) (states have "great

24    latitude under their police powers to legislate as to the protection of the lives, limbs, health,

25    comfort, and quiet of all persons").

26    In its September 13, 2018 Order, this Court held that "[t]he language of the [Byrne JAG]

27    statute gives no indication that DOJ is authorized to add civil immigration conditions."  This Court

28    further held that 34 U.S.C. § 10102(a)(6), the statutory authority DOJ identified in support of its

1    immigration conditions, did not in fact authorize such conditions.  As for the Conditions imposed

2    on the FY 2018 grants, DOJ has made minor changes from the 2017 Notice and Access

3    Conditions, and added new immigration-related conditions with the purpose of forcing States and

4    localities to participate in federal civil immigration enforcement.  While minor changes were

5    made, the substance and effect of the conditions remains the same, and DOJ's attempt to add

6    immigration-based conditions to the Byrne JAG Program is inconsistent with the text, structure,

7    and purpose of the statute.  In addition, this Court rejects Defendants' contention that the

8    immigration conditions are required by federal immigration statutes.

9           **The Notice and Access Conditions**

10          DOJ is imposing on the FY 2018 grants substantively the same Notice and Access

11   Conditions that this Court enjoined for FY 2017.  The Notice and Access Conditions require local

12   governments' law enforcement and detention facilities to adjust their resources and practices (1) to

13   provide 48 hours' notice to federal immigration authorities, upon request from DHS, before

14   releasing certain aliens, and (2) to allow federal immigration officials access to their local

15   detention facilities to interview certain detainees.  Although this Court and multiple other courts

16   have enjoined these conditions, DOJ now attempts to argue that an assortment of statutory

17   provisions require States and local governments to provide notice and access.  The statutory

18   provisions that Defendants rely on are 8 U.S.C. § 1226(a), (c) and 8 U.S.C. § 1231(a).  However,

19   Section 1226(a) and (c) discuss the authority of the Attorney General and provide that he may

20   issue warrants for, and take into custody, certain aliens.  *See* 8 U.S.C. § 1226(a), (c).  Section

21   1232(a) discusses the authority of the Attorney General to remove and detain certain aliens.  None

22   of these statutory provisions are directed to States or local governments.  Defendants cite to

23   additional statutory provisions in an attempt to bolster their position that they have been granted

24   authority by statute to impose these conditions, but this Court finds such attempts unavailing.

25   Neither the Byrne JAG nor any other statute grants the Attorney General "the authority to impose

26   conditions that require states or local governments to assist in immigration enforcement, nor to

27   deny funds to states or local governments for the failure to comply with those conditions." *City of*

28   *Chicago v. Sessions*, 888 F.3d 272, 284 (7th Cir. 2018).  This Court agrees with the position of the

1    Seventh Circuit that "[t]he Attorney General in this case used the sword of federal funding to

2    conscript state and local authorities to aid in federal civil immigration enforcement.  But the power

3    of the purse rests with Congress, which authorized the federal funds at issue and did not impose

4    any immigration enforcement conditions on the receipt of such funds."  *Id*. at 277.

5            The challenged Conditions upset the constitutional balance between state and federal

6    power by requiring state and local law enforcement to partner with federal authorities.  These

7    conditions infringe upon the state police power.  They also upset the constitutional balance by

8    requiring state and local participation in a historically federal function—immigration enforcement.

9    *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 394 (2012) ("The Government of the United

10   States has broad, undoubted power over the subject of immigration and the status of aliens.").

11   Thus, the dispositive question before this Court is whether Congress has "unmistakably"

12   authorized the Attorney General to impose the challenged Conditions.

13           Accordingly, Defendants' imposition of the Notice and Access Condition is ultra vires as a

14   matter of law and a violation of separation of powers.  As a result, Los Angeles's Motion for

15   Summary Judgment is **GRANTED** on Count One as to the Notice and Access Conditions.

16           **The 1373 and 1644 Condition**

17           As provided by Section 1373(a), federal, state, and local governments and officials "may

18   not prohibit, or in any way restrict, any government entity or official from sending to, or receiving

19   from" federal immigration officials "information regarding the citizenship or immigration status,

20   lawful or unlawful, of any individual."  8 U.S.C. § 1373(a).  Section 1373(b) provides that "no

21   person or agency may prohibit, or in any way restrict," a federal, state, or local government from

22   "[m]aintaining such information" or "[e]xchanging such information with any Federal, State, or

23   local government entity."  Section 1644 provides that "no State or local government entity may be

24   prohibited, or in any way restricted, from sending to or receiving from the Immigration and

25   Naturalization Service information regarding the immigration status, lawful or unlawful, of an

26   alien in the United States.  8 U.S.C. § 1644.

27           As Los Angeles argues and this Court agrees, Section 1373 and 1644 are not applicable

28   Federal laws within the meaning of Section 10153(a)(5)(D) such that certification of compliance

6

with them can be required by States and local governments as a condition for Byrne JAG funds.

Neither statute concerns federal grants, and they are unconstitutional as applied to States and local

governments under the Tenth Amendment's anti-commandeering principle.  Moreover, this Court

stands in agreement with three other courts that have already analyzed this issue.[1]  *City of*

*Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 329 (E.D. Pa. 2018) (Section 1373 "regulate[s]

state and local governmental entities and officials, which is fatal to [its] constitutionality under the

Tenth Amendment.");  *City & Cty. of San Francisco v. Sessions*, No. 3:17-cv-04642, Dkt. 145, 30

(N.D. Cal. Oct. 5, 2018) (Section 1373 "require[s] local policymakers to stand aside and allow the

federal government to conscript the time and cooperation of local employees.")  (quoting *City of*

*Chicago v. Sessions*, 2018 WL 3608564, *11 (N.D. Ill. Jul. 27, 2018).).  These statutes violate the

anticommandeering principle of the Tenth Amendment, and the fact that Section 1373 prohibits

States and local governments from acting rather than requiring them to act does not change the

constitutional analysis, because "[t]he basic principles—that Congress cannot issue direct orders

to state legislatures—applies in either event."  *See Murphy v. NCAA*, 138 S. Ct. 1461, 1478

(2018).

       Accordingly, Defendants' imposition of the 1373 and 1644 Condition is ultra vires as a

matter of law and a violation of separation of powers.  As a result, Los Angeles's Motion for

Summary Judgment is **GRANTED** on Count One as to the 1373 and 1644 Condition.

       **The Harboring Condition**

       8 U.S.C. § 1324(a), referred to as the Harboring Condition, is what DOJ contends is an

applicable Federal law under Section 10153(a)(5)(D) so that DOJ can, as a condition on receiving

Byrne JAG grants, require that States and local governments not publicly disclose federal law

enforcement information in an attempt to conceal, harbor, or shield certain individuals from

detection, including in violation of 8 U.S.C § 1324(a).  However, Section 1324(a) is not applicable

to federal grants.  Further, the provisions in Section 1324(a) are not directed at States or local

governments, but instead apply to any person which the Immigration and Nationality Act ("INA")

defines as an "individual or an organization."  8 U.S.C. § 1101(b)(3).  And an organization

---

[1] The same analysis applies to Section 1644 because it also prohibits States and localities from enacting laws governing the duties of state and local law enforcement officers.

7

1   includes corporate entities, not States or local governments.  *See id*. § 1101(a)(28).  In addition,

2   regarding the anticommandeering principle discussed above, an interpretation of Section 1324(a)

3   that would apply to States and local governments and subject them to criminal punishment would

4   be a violation of the Tenth Amendment.  Section 10153(a)(5)(D) does not authorize DOJ to

5   require State and local governments to certify that they will not publicly disclose "federal law

6   enforcement information" in violation of Section 1324(a).

7         Accordingly, Defendants' imposition of the Harboring Condition (8 U.S.C. § 1324(a)) is

8   ultra vires as a matter of law and a violation of separation of powers.  As a result, Los Angeles's

9   Motion for Summary Judgment is **GRANTED** on Count One as to the Harboring Condition.

10         **The Questionnaire and 1366 Conditions**

11         The Questionnaire Condition requires States and local governments to answer various

12   questions about the entity's communication policies with federal immigration authorities.  The

13   Condition requires jurisdictions to provide information about their laws, policies, or practices

14   related to whether, when, or how employees may communicate with DHS or ICE and to explain

15   how those laws, policies, and practices comply with Section 1373.  However, Congress has

16   limited the information that the Attorney General could require of States and local governments to

17   programmatic and financial information as provided in Section 10153(a)(4).  Further, DOJ

18   requires States and local governments to certify that they will not impede the Attorney General's

19   authority under 8 U.S.C. § 1366(1) and (3).  However, those provisions do not concern federal

20   grants, and are not directed to States and local governments.

21         Accordingly, Defendants' imposition of the Questionnaire and 1366 Conditions is ultra

22   vires as a matter of law and a violation of separation of powers.  As a result, Los Angeles's

23   Motion for Summary Judgment is **GRANTED** on Count One as to the Questionnaire and 1366

24   Conditions.

25         Granting Los Angeles summary judgment on Count I affects the balance of Los Angeles's

26   claims.  It renders the remaining counts—Counts II, III, and IV—moot.

27   **Injunctive Relief: Permanent Injunction**

28         Los Angeles seeks to prospectively enjoin Defendants from imposing the Conditions

1    discussed above.  To obtain a permanent injunction, the moving party must show (1) irreparable

2    injury, (2) that monetary damages are inadequate, (3) that the balance of hardships weighs in its

3    favor, and (4) that an injunction serves the public.  *Monsanto Co. v. Geertson Seed Farms*, 561

4    U.S. 139, 156-57 (2010).

5         First, Los Angeles's harm is irreparable and cannot be compensated by monetary damages.

6    Los Angeles will suffer irreparable harm because it will be barred from receiving a funding

7    opportunity which it has been, and otherwise would be, entitled to based on Congress' statutory

8    formula.  Further, Los Angeles will suffer irreparable competitive harm if Defendants are not

9    enjoined from imposing the Conditions in future cycles.  *Int'l Franchise Ass'n, Inc. v. City of*

10   *Seattle*, 803 F.3d 389, 411 (9th Cir. 2015) ("A rule putting plaintiffs at a competitive disadvantage

11   constitutes irreparable harm.").  Second, monetary damages cannot ensure that Los Angeles will

12   compete on a level playing field in future grant cycles.  Third, Los Angeles has a strong interest in

13   competing fairly for federal resources.  Although Defendants have an interest in determining

14   allocation of federal funds, they have no legitimate interest in distributing these funds

15   unconstitutionally.  Finally, it is "always in the public interest" to issue an injunction in order to

16   prevent the violation of constitutional rights.  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.

17   2012).  Therefore, a permanent injunction is appropriate.

18        A district court may issue a nationwide injunction only where "necessary to provide

19   complete relief to the plaintiff[]."  *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also*

20   *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996) ("[A]n

21   injunction is not necessarily made overbroad by extending benefit or protection to persons other

22   than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary

23   to give prevailing parties the relief to which they are entitled.").  This Court cannot reasonably

24   provide complete relief to Los Angeles without enjoining Defendants from imposing the

25   Conditions as to all competitors.  An injunction that bars Defendants from applying the Conditions

26   only as to Los Angeles does little to ensure an even playing field.  *Gregory v. Litton Sys., Inc.*, 472

27   F.2d 631, 633-34 (9th Cir. 1972) ("[I]njunctive relief [may] be necessary to give a plaintiff or a

28   group of plaintiffs the relief to which they are entitled.  Such relief, of course, may incidentally

9

benefit many persons not before the court.").  Thus, this Court finds a program-wide permanent injunction appropriate.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment as to Count One is GRANTED.  (Dkt. 41).

**IT IS HEREBY FURTHER ORDERED** that the remaining claims are moot.

**IT IS HEREBY FURTHER ORDERED** that Defendants' Motion for Partial Dismissal or Partial Summary Judgment is DENIED.  (Dkt. 49).

**IT IS HEREBY FURTHER ORDERED** that Defendants are permanently enjoined from imposing the Conditions on FY 2018 Byrne JAG awards and Gang Suppression Grant Program.

Dated:  February 15, 2019.

 

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE