MICHAEL N. FEUER, SBN 111529
City Attorney
JAMES P. CLARK, SBN 64780
Chief Deputy City Attorney
KATHLEEN A. KENEALY, SBN 212289
Chief Assistant City Attorney
LEELA A. KAPUR, SBN 125548
Executive Assistant City Attorney
VALERIE L. FLORES, SBN 138572
Managing Senior Assistant City Attorney
MICHAEL DUNDAS, SBN 226930
Deputy City Attorney
DANIA MINASSIAN, SBN 198928
STEVEN H. HONG, SBN 212727
200 North Main Street, City Hall East
Suite 800
Los Angeles, California 90012
mike.dundas@lacity.org
Telephone: (213) 978-8130
Facsimile: (213) 978-8312

MITCHELL A. KAMIN, SBN 202788
NEEMA T. SAHNI, SBN 274240
JESSICA R. HANSON, SBN 313247
Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
mkamin@cov.com
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

DAVID M. ZIONTS, *pro hac vice*
IVANO M. VENTRESCA, *pro hac vice*
BENJAMIN L. CAVATARO, *pro hac vice*
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
dzionts@cov.com
Telephone: (202) 662-6000
Facsimile: (202) 662-5987

*Attorneys for Plaintiff City of Los Angeles*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIAM P. BARR, Attorney General of the United States, *et al.*,<br><br>    Defendants. | Case No.: 2:18-cv-07347-R (JCx)<br>**CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Judge:** The Honorable R. Gary Klausner<br>**Date:** November 18, 2019<br>**Time:** 10:00 am |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................. 1

II.     ARGUMENT ..................................................................................... 3

      A.      DOJ's Imposition of the Conditions Exceeds DOJ's Statutory
           Authority and Violates the Separation of Powers. .............................. 3

      B.      The Court's Prior Holding that 8 U.S.C. §§ 1373 and 1644 Violate the
           Tenth Amendment Precludes DOJ's Arguments to the Contrary...... 19

      C.      DOJ's Imposition of the Conditions Violates the Spending Clause. . 20

      D.      DOJ's Imposition of the Conditions Violates the Administrative
           Procedure Act. .................................................................................. 23

      E.      A Program-Wide Injunction Is Appropriate. ..................................... 26

III.    CONCLUSION................................................................................. 27

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) ...................................................................26

*City & Cty. of San Francisco v. Sessions*,
  349 F. Supp. 3d 924 (N.D. Cal. 2018) ................................................ 17, 19

*City & Cty. of San Francisco v. Sessions*,
  372 F. Supp. 3d 928 (N.D. Cal. 2019) ........................................... *passim*

*City & Cty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ..................................................................... 1

*City of Chicago v. Barr*,
  No. 18-C-6859, 2019 WL 4511546 (N.D. Ill. Sept. 19, 2019)........ 14, 15, 16, 21

*City of Chicago v. Sessions*,
  321 F. Supp. 3d 855 (N.D. Ill. 2018) ........................................................ 19

*City of Chicago v. Sessions*,
  888 F.3d 272 (7th Cir. 2018) ............................................................... 12, 17

*City of Evanston, et al. v. Sessions*,
  No. 18-C-4853, 2019 WL 4694734 (N.D. Ill. Sept. 26, 2019)........ 15, 16, 17

*City of Los Angeles v. Barr*,
  929 F.3d 1163 (9th Cir. 2019) ................................................................. 3, 9

*City of Los Angeles v. Sessions, et al.*,
  No. CV 18-7347-R, 2019 WL 1957966 (C.D. Cal. Feb. 15, 2019) ..... *passim*

*City of Los Angeles v. Sessions*,
  No. CV 17-7215-R, 2018 WL 6071072 (C.D. Cal. Sept. 13, 2018) ........... 17

*City of Philadelphia v. Att'y Gen. of U.S.*,
  916 F.3d 276 (3d Cir. 2019) .............................................................. 15, 17

*City of Philadelphia v. Sessions*,
  280 F. Supp. 3d 579 (E.D. Pa. 2017)............................................ 11, 20, 21

ii

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

*City of Philadelphia v. Sessions*,
    309 F. Supp. 3d 289 (E.D. Pa. 2018) ........................................................................... 19

*Earth Island Inst. v. Ruthenbeck*,
    490 F.3d 687 (9th Cir. 2007) ..................................................................................... 27

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) ....................................................................................... 24, 26

*Gonzales v. Oregon*,
    546 U.S. 243 (2006) ................................................................................................. 16

*Harmon v. Thornburgh*,
    878 F.2d 484 (D.C. Cir. 1989) ................................................................................. 27

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ................................................................................................. 23

*Matter of the Hon. James Walsh*,
    B-285066, 2000 WL 675589 (Comp. Gen. May 19, 2000) ......................................... 13

*Int'l Union v. Donovan*,
    746 F.2d 855 (D.C. Cir. 1984) ....................................................................... 7, 23, 24

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ....................................................................................... 7, 23, 24

*Missouri v. Jenkins*,
    515 U.S. 70 (1995) ................................................................................................... 26

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................................... 25

*Multnoma Cty. v. Azar*,
    340 F. Supp. 3d 1046 (D. Or. 2018) ......................................................................... 24

*Murphy v. NCAA*,
    138 S. Ct. 1461 (2018) ............................................................................................. 20

*Nevada v. Skinner*,
    884 F.2d 445 (9th Cir. 1989) ................................................................................... 20

iii

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

*Newman v. Apfel*,
  223 F.3d 937 (9th Cir. 2000) ....................................................................... 23

*Office of Pers. Mgmt. v. Richmond*,
  496 U.S. 414 (1990)....................................................................................... 6

*Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*,
  426 F.3d 1082 (9th Cir. 2005) ..................................................................... 25

*Pennhurst State Sch. & Hosp.*,
  451 U.S. 1 (1981) ......................................................................................... 22

*Sever v. NLRB*,
  231 F.3d 1156 (9th Cir. 2000) ..................................................................... 24

*Shakur v. Schriro*,
  514 F.3d 878 (9th Cir. 2008) ....................................................................... 26

*Sheikh v. U.S. Dep't of Homeland Sec.*,
  685 F. Supp. 2d 1076 (C.D. Cal. 2009) ...................................................... 23

*Sierra Club v. Trump*,
  379 F. Supp. 3d 883 (N.D. Cal. 2019) .................................................... 7, 18

*South Dakota v. Dole*,
  483 U.S. 203 (1987)...................................................................................... 21

*States of New York v. Dep't of Justice*,
  343 F. Supp. 3d 213 (S.D.N.Y. 2018) ......................................................... 18

*U.S. Dep't of Navy v. Fed. Labor Relations Auth.*,
  665 F.3d 1339 (D.C. Cir. 2012)............................................................... 6, 18

*Va. Dep't of Educ. v. Riley*,
  106 F.3d 559 (4th Cir. 1997) (en banc) .................................................. 20, 23

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
  139 S. Ct. 361 (2018).................................................................................... 23

**Statutes**

5 U.S.C. § 701(a)(2)............................................................................................ 23

5 U.S.C. § 706(2)(A) ..................................................................................... 24, 27

8 U.S.C. § 1324 ........................................................................................ 16, 21, 22

8 U.S.C. § 1373 ................................................................................................ *passim*

8 U.S.C. § 1644 ....................................................................................................... 19

28 U.S.C. § 530C(a)(4) ......................................................................................... 10

31 U.S.C. § 1301(a) ................................................................................................ 6

34 U.S.C. § 10102 ................................................................................................. 15

34 U.S.C. § 10102(a)(2) ............................................................................... 14, 15, 16

34 U.S.C. § 10102(a)(6) ........................................................................................ 17

34 U.S.C. § 10122(c)(2)(F) .................................................................................. 19

34 U.S.C. § 10142(2) ............................................................................................ 11

34 U.S.C. § 10228(a) ............................................................................................ 19

34 U.S.C. § 10446(e)(3) ....................................................................................... 11

34 U.S.C. § 11101(a)(10) ............................................................................... 13, 14

34 U.S.C. § 11102(1) ............................................................................................ 13

34 U.S.C. § 11102(2) ............................................................................................ 13

34 U.S.C. § 11102(3) ............................................................................................ 13

34 U.S.C. § 11171 ........................................................................................... *passim*

34 U.S.C. § 11172 ........................................................................................... *passim*

34 U.S.C. § 11173 ............................................................................................. 7, 8

42 U.S.C. § 2000d-4a(1) ......................................................................................... 4

42 U.S.C. § 3796gg-1(e)(3) ................................................................................... 11

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

Dep't of Justice Appropriations Act, Pub. L. No. 115-141, tit. II, 132 Stat.
348 (2018) .................................................................................. 2, 5, 8, 23

Juvenile Justice and Delinquency Prevention Act of 1974, as amended
(2002), Pub. L. No. 93-415 (codified at 34 U.S.C. §§ 11101-11313) ........................... 1

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 1 ................................................................. 20, 21, 24

U.S. Const. art. I, § 9, cl. 7 ........................................................................ 6

**Other Authorities**

Principles of Fed. Appropriations Law, U.S. Gov't Accountability Office,
Office of the Gen'l Counsel (4th ed. 2016) ........................................... 6, 12

## I.      INTRODUCTION

Unable to withhold federal monies outright from so-called "sanctuary" jurisdictions via executive order,[1] the Trump Administration has pursued different means to the same end: the Department of Justice ("DOJ") has sought to impose immigration-related conditions on federal grant programs to pressure States and local communities into changing their policies against entanglement in federal immigration enforcement. Time and again, courts around the country have rejected this approach—enjoining the agency's unlawful immigration conditions year after year—only to have DOJ attach similar conditions on yet another criminal justice grant program that has nothing to do with immigration.

The instant cross-motions involve a grant authorized by the Juvenile Justice and Delinquency Prevention Act of 1974, as amended in 2002 ("Juvenile Justice Act" or "Act") for the prevention, control, or reduction of juvenile delinquency, called the Gang Suppression Planning Grants Program ("Gang Suppression Grant").  The Court should enjoin DOJ's unlawful attempt to condition Juvenile Justice Act funding on six unlawful immigration-related conditions (collectively, the "Conditions").  These Conditions substitute DOJ's immigration enforcement priorities for Congress' juvenile justice priorities and force the City of Los Angeles (the "City") and jurisdictions like it to either fundamentally alter their policing practices or forfeit their clear, statutory eligibility for critical law enforcement funding.

It is true that DOJ and the City disagree on law enforcement policy: for several decades the City has determined that it can best secure public safety by not participating in federal immigration enforcement, a sound judgment that DOJ demeans as opposing

---

[1] *See City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1234-35 (9th Cir. 2018) (holding that the Executive Order conditioning all federal funding on compliance with 8 U.S.C. § 1373 is an unlawful attempt by the Trump Administration to "coopt" for itself Congress's exclusive spending power).

1

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

"law enforcement cooperation." But neither this disagreement, nor DOJ's references to "criminal aliens" and "transnational gangs," is what this case is about. It is about a federal agency's attempt to usurp Congress' authority by attaching DOJ's own immigration-related conditions on funds authorized by Congress pursuant to the Juvenile Justice Act.

Congress did not authorize such conditions. DOJ, instead of addressing this fundamental issue, sidesteps it with the contention that the Act has no relevance to DOJ's Conditions. DOJ thus concedes that if the program is authorized by the Juvenile Justice Act, then the Conditions would be barred. Yet it is clear from the plain text of the statute—which DOJ simply ignores—that the appropriation of funds by Congress was "authorized by," and must be administered "pursuant to," the Juvenile Justice Act. Dep't of Justice Appropriations Act, Pub. L. No. 115-141, tit. II, 132 Stat. 348, 422-23 (2018). And its litigation position notwithstanding, when DOJ issued solicitations for the grant it acknowledged that "[t]his program is authorized pursuant to 34 U.S.C. §§ 11171-11172 [*i.e.*, Sections 261-262 of the Juvenile Justice Act]." Office of Juvenile Justice and Delinquency Programs ("OJJDP") Fiscal Year ("FY") 2018 Gang Suppression Planning Grants Program Solicitation 7 (ECF. No. 47-16, AR01482) (hereinafter "OJJDP Solicitation"). Longstanding appropriations principles confirm that DOJ cannot ignore Congress's command in the authorizing legislation. Thus, DOJ's sole defense of its authority to impose the Conditions—that it has complete discretion to do so—is plainly unsustainable.

DOJ has failed to demonstrate, nor can it demonstrate, that the Office of Justice Programs ("OJP") FY 2018 appropriation, or the Juvenile Justice Act pursuant to which it must be administered, authorizes the Conditions. Indeed, the text and structure of the Act confirm the opposite: the Conditions are *ultra vires*. In the statute, Congress has itself determined who will be "eligible" for grants thereunder. DOJ is precluded from

changing that legislative judgment.  Moreover, Congress knows how to authorize DOJ to place "reasonable conditions" on grants, but did not do so here, confirming DOJ has no such authority with respect to grants, like the Gang Suppression Grant, authorized by the Juvenile Justice Act.  The statutory purposes of the Act, which DOJ must follow, preclude the Conditions as well.  And despite DOJ's repeated invocations of the Immigration and Nationality Act ("INA"), that statute is not at issue here and cannot serve as a bridge between the Juvenile Justice Act and the Conditions as DOJ wishes.  Finally, contrary to DOJ's misleading representations, the Ninth Circuit's recent opinion in *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019), did not involve *conditions* on receiving grant funding.  Rather, the Court expressly "limited" its holding to the challenged consideration factors in that case, which were "not conditions of receiving a grant"—unlike the Conditions at issue here, which seek to fundamentally alter congressionally-prescribed eligibility for grant awards.  *Id.* at 1174.

This Court should grant the City's request for partial summary judgment and impose a permanent, program-wide injunction prohibiting DOJ from attaching the Conditions to Gang Suppression Grant awards.

## II.  ARGUMENT[2]

### A.  DOJ's Imposition of the Conditions Exceeds DOJ's Statutory Authority and Violates the Separation of Powers.

DOJ's imposition of the Conditions on 2018 Gang Suppression Grant applicants and recipients exceeds DOJ's statutory authority and violates constitutional principles of

---

[2] DOJ appears to question the City's standing to challenge the agency's imposition of the Conditions.  DOJ Br. 12.  But the Court already denied DOJ's motion to dismiss on standing grounds, *City of Los Angeles v. Sessions, et al.*, No. CV 18-7347-R, 2019 WL

separation of powers.  DOJ does not respond to, and therefore concedes, that a grant program authorized under the Juvenile Justice Act cannot include the challenged immigration-related Conditions.  Instead, DOJ's defense of the Conditions is limited to the claim that the Gang Suppression Grant program is not authorized under Sections 261 and 262 of the Juvenile Justice Act, 34 U.S.C. §§ 11171-11172.  This is simply wrong.[3] DOJ's authority to administer the appropriated funds comes from the text of the appropriation itself as well as the authorizing statute referenced in the appropriation—the Juvenile Justice Act (codified at 34 U.S.C. §§ 11101-11313).  The funds at issue here are undeniably tied to 34 U.S.C. §§ 11171-11172.  And neither the appropriation nor the Juvenile Justice Act authorizes the Conditions.

### 1. The Gang Suppression Grant Is Authorized by the Juvenile Justice Act.

DOJ's entire argument rests on an unfounded premise: that the Juvenile Justice Act

---

1957966, at *2 (C.D. Cal. Feb. 15, 2019), and DOJ makes no further argument on the issue.

[3] DOJ also implies that the Conditions are limited in their scope because they apply "*only* to the programs or activities receiving federal financial assistance under the award (*i.e.*, not to the award recipient as a whole)."  DOJ Br. 10.  Such a limitation would not transform the Conditions into legally authorized exercises of authority.  In any event, DOJ's suggestion is misleading.  The OJJDP Solicitation incorporates, for its required certifications of compliance, the broad definition of "program or activity" that is set forth in 42 U.S.C. § 2000d-4a.  *See* OJJDP Solicitation 52-53 (AR01527-28).  Section 2000d-4a defines "program or activity" as "all of the operations of" either the "department, agency, special purpose district, or other instrumentality of a State or of a local government" that receives funding or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]"  42 U.S.C. § 2000d-4a(1).  The entity that would receive funding here is the City of Los Angeles, and all of its operations include much more than its planned implementation of the Gang Suppression Grant funds.  Thus, DOJ seeks to broadly impose its policy priorities on States and localities.

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

did not authorize DOJ's creation of the Gang Suppression Grant, but rather, a "one-line appropriation" disconnected from any "substantive statutory program authorization" did so.  DOJ's Mem. in Support of Mot. for Partial Sum. Judgm. and Opp. to Plaintiff's Mot. for Sum. Judgm., ECF No. 88 (filed Sept. 20, 2019) ("DOJ Br.") 12-14.

This position flatly ignores the text of the appropriation.  The appropriation contains two line items from which DOJ created the Gang Suppression Grant: "$27,500,000 for delinquency prevention, as authorized by section 505 of the 1974 [Juvenile Justice] Act, of which, pursuant to sections 261 and 262 [34 U.S.C. §§ 11171 and 11172] thereof . . . (B) $4,000,000 shall be for gang and youth violence education, prevention and intervention, and related activities; . . . [and] (E) $8,000,000 shall be for community-based violence prevention initiatives, including for public health approaches to reducing shootings and violence."  Dep't of Justice Appropriations Act, 132 Stat. at 422-23.  In other words, Congress made clear, through the statutory text of its appropriation, that the appropriated funds for the Gang Suppression Grant are governed by the Juvenile Justice Act: the Act "*authorizes*" the appropriation, and the appropriation must be made "*pursuant to*" sections 261 and 262 of the Act (codified at 34 U.S.C. §§ 11171-11172) (emphasis added).

Buried in a footnote, DOJ contends that the Gang Suppression Grant program is somehow only authorized by the Juvenile Justice Act "in a general sense."  The agency offers no real explanation for what that means.  DOJ Br. 14 n.6.  In any case, while DOJ's litigating position turns on an opaque and evasive turn-of-phrase, prior to litigation the agency was much clearer: according to DOJ's own grant solicitation, "[t]his program is authorized pursuant to 34 U.S.C. §§ 11171-11172."  OJJDP Solicitation 7 (AR01482). When OJJDP announced the grant and straightforwardly acknowledged that it was "authorized by" these provisions of the Juvenile Justice Act, it did not qualify that

authorization as being "only in a general sense," as DOJ tries to do now in a transparent effort to shore up its untenable litigation position.

DOJ tries, but fails, to sweep under the rug the actual statutory authority for disbursing the funds made available in the FY 2018 OJP appropriation. The agency's position runs directly counter to the fundamental principle that appropriations "be applied only to the objects for which the appropriations were made except as otherwise provided by law." 31 U.S.C. § 1301(a); *see also* U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause). Indeed, the Appropriations Clause was designed to "assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 428 (1990). "[I]n order for appropriated funds to be legally available for an expenditure, the purpose of the obligation or expenditure *must be authorized*." *U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339, 1348 (D.C. Cir. 2012) (emphasis added). Thus, critically, "appropriations to carry out enabling or authorizing laws must be expended *in accordance with the original authorization* both as to the amount of funds to be expended and the nature of the work authorized." Principles of Fed. Appropriations Law, U.S. Gov't Accountability Office, Office of the Gen'l Counsel, at 2-57 (4th ed. 2016) (hereinafter, "Principles of Fed. Appropriations Law") (emphasis added).

Consistent with this fundamental tenet of appropriations law, where an appropriation incorporates provisions from the legislation that authorized it, its authorizing legislation *necessarily restricts* the use of the appropriated funds. "For example, if an agency receives a line-item authorization and a lump-sum appropriation pursuant to the authorization, the line-item restrictions and earmarks in the authorization act will apply just as if they appeared in the appropriation act itself." *Id.* at 6-10. Applied here, this means that *both* the appropriation *and* the Juvenile Justice Act which

authorizes it delineate how DOJ is to disburse the appropriated funds, and what it can and cannot do in exercising that disbursement authority.

To support its absurd argument that the Juvenile Justice Act does not govern DOJ's use of the appropriated monies, despite plain statutory text to the contrary, DOJ cites two Administrative Procedure Act ("APA") reviewability cases—*Lincoln v. Vigil*, 508 U.S. 182 (1993), and *Int'l Union v. Donovan*, 746 F.2d 855 (D.C. Cir. 1984).  DOJ Br. 14-15.  But in neither of those cases did the appropriation incorporate a piece of authorizing legislation "pursuant to" which the funding had to be appropriated.  *See also Sierra Club v. Trump*, 379 F. Supp. 3d 883, 910 (N.D. Cal. 2019) (cautioning U.S. government not to confuse APA reviewability standards with *ultra vires* review standards).  *Lincoln* and *Donovan* are properly addressed in the APA section, *infra* II(D).

### 2.  The Juvenile Justice Act Does Not Authorize the Conditions.

DOJ's effort to evade the role of the Juvenile Justice Act in this case accordingly fails.  But the attempt is also understandable, because once the Act is considered, it is clear that the Conditions are *ultra vires*.[4]

### a)  The Act's Eligibility Provision Forecloses the Conditions.

In its opening brief, the City explained why the Juvenile Justice Act's sole "Eligibility" provision, 34 U.S.C. section 11173, forecloses DOJ's imposition of the Conditions.  *See* City of Los Angeles' Mem. in Support of Mot. for Partial Sum. Judgm. and Perm. Inj., ECF No. 82-1 (filed Aug. 21, 2019) ("LA Br.") 14.  DOJ does nothing to counter this argument, other than to confirm that the agency does not, in fact, impose the

---

[4] DOJ makes no discernable argument that Line Items B and E of the FY 2018 OJP appropriation authorize the Conditions.  The City therefore focuses on the Juvenile Justice Act provisions.

Conditions until *after* it determines who is eligible for the Gang Suppression Grant.[5]
DOJ Br. 17.  DOJ therefore concedes that the Conditions constitute an eligibility
determination not authorized by the Act's express "Eligibility" provision, which has the
effect of withholding grant monies from applicants otherwise deemed eligible by
*Congress* to receive an award.[6]  This extra-statutory, additional eligibility requirement is,
by definition, *ultra vires*.

DOJ misreads the City's focus on eligibility as making a notice argument and
responds that there is no "bait-and-switch."  DOJ Br. 17.  DOJ misses the point, which is
not about notice at all.  What DOJ's imposition of the Conditions after determining
eligibility for the Gang Suppression Grant shows is that the Conditions operate as a
categorical barrier to eligibility for the grant.  And that is at odds with the statute, which
provides the only eligibility criteria that Congress has actually authorized.

DOJ further argues that, because Congress appropriated funds for the Gang
Suppression Grant in a "one-line appropriation not tied to a particular program, the
agency's discretion in determining how to spend the appropriated funds is at its zenith."
DOJ Br. 14.  But that is not responsive to the City's "Eligibility" argument, either.  The
City is not challenging the DOJ's exercise of discretion in the scoring process for
determining grant allocations.  Rather, the point is that *after* DOJ exercises its discretion

---

[5] This is with the exception of the Questionnaire Condition, the purpose of which is still
largely unexplained.  In its brief, DOJ hinted that the Condition's purpose was "to assess
the accuracy of each recipient's certification that it could fulfill these requirements," DOJ
Br. 9, a purpose that the Northern District of California disapproved of as being
connected to "certifying compliance with [8 U.S.C.] Section 1373."  *City & Cty. of San
Francisco v. Sessions*, 372 F. Supp. 3d 928, 948 (N.D. Cal. 2019).

[6] The Act's "Eligibility" provision applies to sections 261 and 262 (34 U.S.C. §§ 11171-
11172) of the Act because it provides what applicants must do "[t]o be eligible to receive
a grant *made under this part*[.]"  34 U.S.C. § 11173 (emphasis added).

and selects the applicants most deserving of funds to carry out the purposes of the grant program, it cannot nonetheless reject those applicants based on an eligibility requirement different from the sole eligibility requirement that Congress enacted.

This important distinction also illustrates why DOJ's reliance on the Ninth Circuit's recent opinion in *City of Los Angeles v. Barr* is misplaced. The Community Oriented Policing Services ("COPS") Hiring Grant decision involved a different grant program, a different appropriation, and a different authorizing statute. But even more critically in this context, the "scoring factors" used by DOJ for implementing the COPS grant were just that: factors that the DOJ could consider in scoring grant applications, as opposed to actual conditions which, like those at issue here, must be agreed to by otherwise-eligible jurisdictions in order to accept funding. The Ninth Circuit itself drew this distinction, emphasizing that its holding was "limited" because in the COPS grant, "[a]n applicant did not need to select the illegal immigration focus or submit the Certification to receive funds." *City of Los Angeles*, 929 F.3d at 1172. This stands in stark contrast to the Conditions challenged here, which are deployed as actual *conditions* to receiving an award.[7]

---

[7] DOJ quotes a sentence from the COPS decision for the proposition that Congress delegated authority to DOJ to impose the considerations in the COPS program. DOJ Br. 13. But that sentence is from the portion of the opinion analyzing the City's Spending Clause claims. *See City of Los Angeles*, 929 F.3d at 1175 n.6. The Ninth Circuit's statement that Congress delegated authority to DOJ to craft eligibility factors in that case rested on its holding that the underlying statute (the Violent Crime Control and Law Enforcement Act) authorized DOJ to do so. *See id.* at 1181. That is not the case here.

**b)**     **The Authorizing Provisions Incorporated into the Appropriation Do Not Authorize the Conditions.**

DOJ also does not attempt to square its unlawful Conditions with the text and structure of the Juvenile Justice Act, which is incorporated into the appropriation on which DOJ relies.  Whatever discretion DOJ has in selecting which grant applicants are most deserving, it has no authority to create new conditions on grant eligibility that are not authorized by Congress, particularly (though not only) ones not even tied to the purposes of the Act.[8]  DOJ's "authority to advance particular law enforcement strategies" in imposing restrictions on congressionally-appropriated funding is still cabined by the dictates of the Juvenile Justice Act.  Specifically, Congress restricted the subject matter of grants disbursed under the Act by providing that "[t]he Administrator may make grants . . . to carry out projects for the development, testing, and demonstration of promising initiatives and programs for the prevention, control, or reduction of juvenile delinquency," *id*. § 11171(a), and grants "to provide technical assistance . . . to carry out projects for which grants are made under section 11171 of this title," *id*. § 11172.  In doing so, DOJ must "ensure that, to the extent reasonable and practicable, such grants are made to achieve an equitable geographic distribution of such projects throughout the United States."  *Id.* § 11171(a).

DOJ's Conditions do not fit within any of these mandates.  As to the first, instead of funding projects to develop, test, and demonstrate promising initiatives, DOJ seeks to impose a set of one-size-fits-all federal civil immigration prerogatives on local police

---

[8] DOJ cites 28 U.S.C. § 530C(a)(4) for the proposition that it can use "any means necessary" to carry out DOJ activities, including through grants.  DOJ Br. 13.  Not only did DOJ leave out the part of that provision that limits even this authority to "the extent provided otherwise by law," but section 530C only relates to how DOJ can run its *own* department.  It gives DOJ no authority to place conditions on grants authorized by Congress.

departments as a condition of funding.  DOJ claims that "a program that seeks to attack the dangerous effects of transnational gangs that prey on juveniles—like MS-13—aids in the prevention, control, and reduction of juvenile delinquency."  DOJ Br. 17.  As enticing as that statement may be as a general proposition, DOJ still fails to explain how the Juvenile Justice Act actually *authorizes* the six immigration-related Conditions.

As to the second, DOJ does not even address the technical assistance purpose. And finally, far from ensuring an equitable geographic distribution of funds, DOJ's Conditions in fact discriminate against large metropolitan areas like Los Angeles, San Francisco, New York, Philadelphia, and Chicago, that have local and State policies drawing a bright line between police and immigration enforcement.

In short, DOJ can point to nothing in the text or structure of the Act that affirmatively authorizes its Conditions.  But equally telling is what the statute *does not say*.  As the City previously pointed out, LA Br. 13, Congress knows how to grant an agency broad authority to impose conditions on a grant program, and it did not do so here.  *See City of Los Angeles*, 293 F. Supp. 3d 1087, 1097 (C.D. Cal. 2018) (citing 42 U.S.C. § 3796gg-1(e)(3), now 34 U.S.C. § 10446(e)(3)).  For example, in 34 U.S.C. section 10446(e)(3), Congress authorized the Attorney General to impose "reasonable conditions" on grants to combat violent crimes against women.  In section 10142(2), Congress authorized the Assistant Attorney General ("AAG") to impose "terms and conditions" on grants to prevent violence against law enforcement officers.[9]  34 U.S.C. § 10142(2).  The relevant provisions of the Juvenile Justice Act contain no such broad delegations.  *See City of Philadelphia v. Att'y Gen. of U.S.*, 916 F.3d 276, 286 (3d Cir. 2019) (relying on existence of such provisions in other grants to infer the lack of such

---

[9] Los Angeles does not concede that the Conditions would be permissible under sections 10142 or 10446, but instead argues only that the broad delegations there stand in stark contrast to the absence of any such delegation in the Juvenile Justice Act.

authority with respect to the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") program); *City of Chicago v. Sessions*, 888 F.3d 272, 286 (7th Cir. 2018) (same). DOJ makes no effort to counter this argument.

Instead of addressing the text and structure of the Act, DOJ focuses mostly on the supposed breadth of its discretion in disbursing appropriated funds. According to the agency, that discretion purportedly includes "the authority to advance particular law enforcement strategies to address gang violence," DOJ Br. 15, and that authority allows it to give "priority consideration" to programs that "demonstrate knowledge of and are impacted by 'transnational gangs such as MS-13 or M-18.'" DOJ Br. 16 (citing AR01485). But as discussed above, the City is not challenging DOJ's exercise of discretion in the scoring process for determining grant allocations. As such, the "priority consideration" for jurisdictions that show knowledge of MS-13 is not at issue in this litigation; indeed, as DOJ admits, Los Angeles is the birthplace of MS-13, *see* ECF No. 88-2 ¶ 3, and its proposal for FY 2018 Gang Suppression funding included a plan specifically targeted to research, evaluate, and use community-facing, fact-based methodologies to better understand MS-13 activities and their effects on juvenile delinquency in certain Los Angeles neighborhoods. *See* LA Br. 7-9. DOJ's attempt to distract from the lack of authorization for its actions in the Juvenile Justice Act fails.

### c) The Act's Three Purposes Do Not Support the Conditions.

In addition, DOJ must disburse the appropriated funding in accordance with the purposes of the authorizing legislation—again, the Juvenile Justice Act as amended in 2002. *See* Principles of Fed. Appropriations Law at 2-65 ("Except to the extent Congress expressly expands or limits authorized purposes in the appropriation act, the appropriation must be used in accordance with the authorization act in terms of purpose."). These three statutorily enacted purposes are (1) to "support State and local programs that prevent juvenile involvement in delinquent behavior," (2) to "assist State

and local governments in promoting public safety by encouraging accountability for acts of juvenile delinquency," and (3) to "assist State and local governments in addressing juvenile crime through the provision of technical assistance, research, training, evaluation, and the dissemination of information on effective programs for combating juvenile delinquency."  34 U.S.C. §§ 11102(1)-(3).  The appropriations language supplements but does not replace these purposes.  The Office of Juvenile Justice and Delinquency Prevention recognized this in its design of the Gang Suppression Grant, because it focused on preventing and addressing *juvenile* gang involvement, not on gang suppression writ large.  *See* OJJDP Solicitation 5-6 (AR01480-81) (providing overview of grant program designed to address *youth* delinquency, violence, and gang involvement).

While the Act's purposes make clear that appropriated funds must be used to assist and support *State and local* efforts to address juvenile crime and delinquency, DOJ's Conditions would use federal money to enlist States and localities to assist and support *federal* efforts to enforce civil immigration law generally—not at all what Congress intended.

Moreover, the "inclusion of examples of eligible activities" in the Juvenile Justice Act is "definitional in nature" and clarifies the scope of permissible uses of the funding. *Matter of the Hon. James Walsh*, B-285066, 2000 WL 675589, at *5 (Comp. Gen. May 19, 2000).  Here, Congress specified that the problems associated with juvenile delinquency should be addressed by a two-track, "common sense approach."  34 U.S.C. § 11101(a)(10).  This approach includes promoting "(A) quality prevention programs that . . . . work with juveniles, their families, local public agencies, and community-based organizations, and take into consideration such factors as whether or not juveniles have been the victims of family violence (including child abuse and neglect) . . . and (B) programs that assist in holding juveniles accountable for their actions and in developing

the competencies necessary to become responsible and productive members of their communities . . . ." *Id.* These examples clarify the scope of permissible uses of the funding, and make even clearer that Congress did not intend what DOJ now attempts to do. As for the first of the two tracks, DOJ's Conditions are in no way directed at working *with* juveniles in any capacity, much less assessing whether they have been victims of family violence. And as for the second track, the Conditions in no way support programs that work with juveniles to develop core competencies to "become responsible and productive members of their communities." *Id.* In fact, DOJ's Conditions do not contemplate States or localities working *with* juveniles at all. Rather, they focus on local enforcement of civil immigration law against noncitizen adults, regardless of whether those adults are gang-affiliated, in order to remove those adults from the United States and prevent them from hypothetically influencing youths and recruiting them into criminal activity at some theoretical point in the future. The Conditions on the Gang Suppression Grant therefore run counter to the statutory purposes of the Act and fall far outside of the permissible uses reflected in the two-track approach Congress had in mind when appropriating these funds.

### 3. The Assistant Attorney General's Responsibility to "Maintain Liaison" with State and Local Governments Does Not Authorize the Harboring and Questionnaire Conditions.

DOJ again invokes the AAG's statutory responsibility for "maintain[ing] liaison with . . . State governments in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), this time as authority for imposing the Harboring and Questionnaire Conditions. DOJ Br. 16. Section 10102(a)(2)'s description of a federal official's responsibilities does not authorize and cannot justify imposing the Harboring and Questionnaire Conditions. Several courts have rejected such an argument in the context of DOJ's attempt to impose immigration conditions on the Byrne JAG program. *See,*

*e.g.*, *City & Cty. of San Francisco*, 372 F. Supp. 3d at 943-44; *City of Chicago v. Barr*, No. 18-C-6859, 2019 WL 4511546, at *12-*13 (N.D. Ill. Sept. 19, 2019); *City of Evanston, et al. v. Sessions*, No. 18-C-4853, 2019 WL 4694734, at *6 (N.D. Ill. Sept. 26, 2019); *see also City of Philadelphia*, 916 F.3d at 288 (in the context of another subsection of 10102, the Third Circuit Court of Appeals held that, "[g]iven its text and structure, 34 U.S.C. § 10102 does not authorize the Attorney General's imposition of the Challenged Conditions" on the Byrne JAG program).  The reasoning of those courts applies equally in the Gang Suppression Grant context because section 10102 is located in the same title of the U.S. Code as the Juvenile Justice Act and generally describes the ministerial duties of the AAG within that title—the same exact function that provision performs with respect to the Byrne JAG program.

Section 10102(a)(2) is a responsibility Congress imposes on the AAG, not on States or local governments; therefore, DOJ cannot use it to compel States or localities to do anything, nor can DOJ use it to attach conditions to grant programs to encourage States or localities to do something.  Through that provision, Congress defines the AAG's responsibilities to include being a liaison with state and local officials.  That implies only that the AAG is a federal point-of-contact—not that the AAG is empowered to extract information from States or local governments as a condition of receiving statutorily authorized federal funds.  DOJ makes a gigantic leap between its liaison responsibilities in section 10102(a)(2) and the claim that it is "naturally empowered" to "secure information regarding state and local law and policies."  DOJ Br. 16.

Further, DOJ's purported "natural entitle[ment]" to enforce the Harboring Condition is based on a misrepresentation of that Condition as solely requiring "protection of sensitive federal law enforcement information."  DOJ Br. 16.  Even if section 10102(a)(2) somehow authorized DOJ to require a confidentiality agreement when sharing sensitive information, that is not the issue here.  The Harboring Condition

casts a much wider net and prohibits information sharing that, according to DOJ, would constitute any undefined "attempt to harbor or shield an alien or fugitive from detection, regardless of whether the disclosure would violate 8 U.S.C. § 1324(a)."  OJJDP Solicitation 39, 52 (AR01514, AR01527); *see also City & Cty. of San Francisco*, 372 F. Supp. 3d at 944 ("Given the current tension between federal and local authorities, it does not require much imagination to think that the AAG today might well consider many parts of the 'sanctuary' laws as indirect attempts to harbor 'aliens,' despite rulings of courts around the country that have rejected DOJ's interpretations of its authority and the constitutionality of [8 U.S.C.] Section 1373.").

The recent opinions of the District Court for the Northern District of Illinois in *City of Chicago*, 2019 WL 4511546, and *City of Evanston*, 2019 WL 4694734, are instructive in this regard.  In *City of Chicago*, the Court rejected DOJ's argument that section 10102(a)(2) provided authority for the Harboring Condition, reasoning that the plain language of that provision did not support DOJ's interpretation.  Rather, section 10102(a)(2) is "more plausibly read as an instruction for the AAG to maintain bilateral communications or act as a point of contact with state and local governments."  2019 WL 4511546 at *12.  The Court highlighted the ministerial nature of this provision and endorsed the statutory interpretation principle that Congress would not have "hidden an elephant in a mousehole"—meaning it would not grant the agency broad sweeping authority buried in a ministerial subsection describing the job duties of an agency official.  *Id.* at *13 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006)).

In *City of Evanston*, the Court reiterated these points as to the Questionnaire Condition.  2019 WL 4694734, at *6 ("The AAG's duty to 'maintain liaison . . . in matters relating to criminal justice' does not provide the Attorney General authority to require would-be . . . grantees to detail their laws, policies, and practices that relate to how their employees communicate with [the Department of Homeland Security ("DHS")]

or [U.S. Immigration and Customs Enforcement ("ICE")], nor how each complies with [8 U.S.C.] Section 1373.") (quoting 34 U.S.C. § 10102(a)(2)).  The Court added that DOJ's description of the Questionnaire Condition as "requiring modest cooperation" was a concession that it "imposes exactly the type of burden on State and local governments" that the other unlawful Conditions do.[10]  *Id.* at *7.

### 4. The 1373 and 1644 Conditions Are Not Authorized by 34 U.S.C. § 10102(a)(6).

In a single sentence in its introduction, DOJ Br. 5, DOJ argues that the 1373 and 1644 Conditions are authorized by 34 U.S.C. § 10102(a)(6), the last provision in a list of ministerial duties and powers "as may be vested in the Assistant Attorney General pursuant to this chapter," *including* "placing special conditions on all grants."  34 U.S.C. § 10102(a)(6).  But the Court, other district courts, and the Third and Seventh Circuit Courts of Appeal have roundly rejected DOJ's argument that section 10102(a)(6) authorizes the Conditions.  *See, e.g.*, *City of Los Angeles v. Sessions*, No. CV 17-7215-R, 2018 WL 6071072, at *2 (C.D. Cal. Sept. 13, 2018); *City of Los Angeles*, 2019 WL 1957966, at *3; *City of Philadelphia*, 916 F.3d at 287-88; *City of Chicago*, 888 F.3d at 284-85; *City of Evanston*, 2019 WL 4694734, at *6; *City & Cty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 947 (N.D. Cal. 2018), *judgment entered sub nom. California ex rel. Becerra v. Sessions*, No. 3:17-CV-04701-WHO, 2018 WL 6069940

---

[10] DOJ is also incorrect that the Questionnaire Condition is authorized by "OJP's inherent authority in a discretionary program to dictate the form of an application."  DOJ Br. 16. DOJ cites nothing to substantiate this claim.  And any authority DOJ may have to dictate the "form" of an application "does not constitute a grant of authority to require any additional information [DOJ] wishes."  *City of Evanston*, 2019 WL 4694734, at *7.

(N.D. Cal. Nov. 20, 2018); *City & Cty. of San Francisco*, 372 F. Supp. 3d at 942-43; *States of New York v. Dep't of Justice*, 343 F. Supp. 3d 213, 228 (S.D.N.Y. 2018).

### 5.    DOJ's "Contemplation" Theory of Appropriations Law Raises Serious Separation of Powers Concerns.

In another meritless attempt to justify the Conditions, DOJ delves into INA provisions and states that the INA "repeatedly contemplates" that State and local law enforcement agencies would cooperate with federal immigration enforcement efforts. *See* DOJ Br. 3, 6-8, 10-11, 28.  But even assuming *arguendo* that DOJ is correct in its interpretation of the INA's complex provisions, mere "contemplations" in the INA—a statute that neither references, nor is referenced in, the appropriations act or authorizing legislation here—cannot, under separation of powers principles, supply DOJ with the authority to impose the Conditions on federal spending.  DOJ seems to argue that because an unrelated statute "contemplates" general law enforcement cooperation, DOJ can therefore exercise spending authority by embedding cooperation-related Conditions in the Gang Suppression Grant (and, under DOJ's theory, virtually any grant, regardless of the appropriation or authorization language).  This is incorrect, because "all uses of appropriated funds must be *affirmatively approved* by Congress."  *U.S. Dep't of Navy*, 665 F.3d at 1348 (emphasis added).  "To have this any other way would deprive Congress of its absolute control over the power of the purse[.]"  *Id.* at 1346-47; *accord Sierra Club*, 379 F. Supp. 3d at 918.

For these reasons, to lend any credence to DOJ's theory that the INA is an implied source of authority for imposing the Conditions would raise serious separation of powers concerns.  Indeed, in the Byrne JAG litigation, DOJ initially attempted to use the INA in similar ways, before ultimately conceding that DOJ was not claiming to derive authority from the INA.  *See* Reply Br. for Appellants, *City of Los Angeles v. Whitaker, et al.*, No. 18-56292, at 14 (9th Cir., filed Dec. 28, 2018) ("The Department has not relied on the

INA as a source of statutory authority to impose the conditions.").  Whether or not DOJ ultimately makes the same concession here, the result must be the same.[11]

\*     \*     \*

For any one of the foregoing reasons, but overwhelmingly when considering them together, DOJ's imposition of the Conditions on Juvenile Justice Act-appropriated funding is *ultra vires* and violates the separation of powers.

## B.     The Court's Prior Holding that 8 U.S.C. §§ 1373 and 1644 Violate the Tenth Amendment Precludes DOJ's Arguments to the Contrary.

On February 15, 2019, the Court held that 8 U.S.C. sections 1373 and 1644 are unconstitutional as applied to States and localities because they violate the Tenth Amendment's anti-commandeering principle.  *See City of Los Angeles*, 2019 WL 1957966, at \*4; *see also id.* (approving of the same holdings in *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 329 (E.D. Pa. 2018), *City & Cty. of San Francisco*, 349 F. Supp. 3d at 953, and *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 873 (N.D. Ill. 2018)).  DOJ's renewed attempt to argue otherwise is therefore precluded by the law of the case.

---

[11] Further, the Conditions authorize the federal government to exercise direction, supervision, or control over state and local law enforcement in violation of 34 U.S.C. § 10228(a).  All federal grant programs are "voluntary" in the sense DOJ argues is the case here, yet Congress was still concerned about the executive branch's use of these programs to impose "*any* discretion, supervision, or control" on State and local law enforcement agencies.  *Id.* (emphasis added).  The provision DOJ cites for Congress's "express[] encourage[ment]" of cooperation among law enforcement, DOJ Br. 18, should be given no weight because it relates to a different agency's authorization to *conduct research* relating to, *inter alia*, whether enhanced cooperation among local, state, and federal law enforcement could help prevent and combat *white collar crime* and *public corruption*.  *See* 34 U.S.C. § 10122(c)(2)(F).  This provision has no import here.

DOJ argues that the Conditions are not affirmative commands but rather prohibitions on the "frustration" of federal law enforcement.  DOJ Br. 24.  But this argument files in the face of the Supreme Court's ruling in *Murphy v. NCAA*, 138 S. Ct. 1461, 1487 (2018), which squarely rejected this argument.  *See* 138 S. Ct. at 1476 (direct commands to state and local governments, whether in the affirmative or framed as a prohibition, constitute unconstitutional commandeering).

In any event, the Conditions *do* affirmatively compel recipients to "administer a federal program"—applicants must provide DHS "notice" when DHS requests and "access" to local correctional facilities when DHS requests; must give up control over the scarce time and resources of their law enforcement employees to allow them to provide any information the federal government desires, whenever it desires it; and must alter existing policies and practices in order to align them with the federal government's civil immigration priorities.  Interpreting those statutes as requiring (or prohibiting) actions by States and localities violates the anti-commandeering doctrine.  *See Murphy*, 138 S. Ct. at 1477-78; *City of Los Angeles*, 2019 WL 1957966, at *4; *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 651 (E.D. Pa. 2017), *appeal dismissed sub nom. City of Philadelphia v. Att'y Gen.*, No. 18-1103, 2018 WL 3475491 (3d Cir. July 6, 2018); *Va. Dep't of Educ. v. Riley*, 106 F.3d 559, 570 (4th Cir. 1997) (en banc).

## C.    DOJ's Imposition of the Conditions Violates the Spending Clause.

Even if Congress had delegated to DOJ the authority to place the Conditions on the funding appropriated through the Juvenile Justice Act—which it did not, for the reasons discussed *supra* II(A)—DOJ's imposition of the Conditions would violate the Spending Clause of the U.S. Constitution, U.S. Const. art. I, § 8, cl. 1.

The Conditions are not "reasonably related" to the Juvenile Justice Act's "articulated goal[s]."  *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989).  To argue to the contrary, DOJ makes cursory references to "core concern[s]" of the INA, cooperation

1   amongst all levels of law enforcement, a tweet by the Mayor of Oakland, and

2   "transnational gangs."  DOJ Br. 19-20.  None of DOJ's arguments demonstrates *any*

3   discernable relationship between the unlawful Conditions and the Juvenile Justice Act.

4         DOJ concludes by stating that the Conditions "support[] the intrinsic purposes of

5   the Gang Suppression program."  DOJ Br. 20.  But the Spending Clause does not task

6   DOJ with demonstrating how the Conditions "support" the grant program DOJ itself

7   created.  The federal interest the Court is required to consider for Spending Clause

8   purposes is Congress's interest as stated in the Juvenile Justice Act, not DOJ's "interest

9   in public safety or immigration enforcement, which is not mentioned in the statute."

10   *Philadelphia*, 280 F. Supp. 3d at 643.  DOJ's "framing . . . situates the discussion at much

11   too general a level."  *Id.* at 641.

12         Conditions must also be clear and unambiguous.  *South Dakota v. Dole*, 483 U.S.

13   203, 207 (1987).  Here, they are neither.[12]  *See* LA Br. 17-18.  Other than declaring that

14   the Conditions "very clearly" state their own requirements, DOJ Br. 21-22, DOJ does not

15   address the issues the City has repeatedly flagged as being ambiguous.  *See* LA Br. 17-

16   18; *City of Los Angeles*, 2019 WL 1957966, at *4.  For example, DOJ concedes that 8

17   U.S.C. § 1324 is inapplicable to States and localities, explaining that its Harboring

18   Condition (which cites section 1324) "does not seek to 'apply' [section 1324] in the sense

19   of prosecuting the City."  DOJ Br. 24.  But this is inconsistent with prior statements made

20   by high-ranking DHS officials that a federal court characterized as "credible threats of

21   criminal prosecution" of local elected officials for violating section 1324.  *See City of*

22   *Chicago*, 2019 WL 4511546, at *6.  Even taking DOJ at its word that it would no longer

23

24   _____

25   [12] Again, the City only assumes the Conditions were authorized for the purpose of
       making its Spending Clause argument.  But "[c]onditions cannot have been

26   unambiguously authorized . . . if they were never statutorily authorized."  *City of*
       *Philadelphia*, 280 F. Supp. 3d at 646.

27

28

seek to "apply" section 1324 to the City, it is not clear in what other "sense" section 1324, a criminal statute, would apply.  The Harboring Condition also sweeps "well beyond DOJ's stated purposes" in requiring "grantees to comply with the unexplained and unbounded discretion of the AAG to avoid 'indirect attempts' to disclose information."  *City & Cty. of San Francisco*, 372 F. Supp. 3d at 949 (quoting the Harboring Condition language); *see also id.* (holding that the Harboring Condition "flunks the operative test of whether it allows grantees to participate in the [Gang Suppression Grant] Program 'knowingly' and 'cognizant of the consequences.'" (quoting *Pennhurst State Sch. & Hosp.*, 451 U.S. 1, 17 (1981))).[13]

DOJ also fails to explain the purpose of the Questionnaire Condition, other than a single sentence in its background section hinting that the purpose is to "assess the accuracy of each recipient's certification that it could fulfill these requirements," DOJ Br. 9.  Because this seems to "test" applicants' ability to comply with 8 U.S.C. § 1373, which this Court held unconstitutional as applied to States and localities, it remains unclear what the purpose is for this Condition.  DOJ does not even attempt to clarify the purpose or applicability of the 1366 Condition.[14]

_____

[13] It is no response for DOJ to say that if applicants have questions about what constitutes "harboring," they can contact OJP.  "It is not an answer to refer questions to [OJP]—the scope must be clear from the condition so that prospective [Gang Suppression Grant] applicants may make an informed choice, cognizant of the consequences."  *City & Cty. of San Francisco*, 372 F. Supp. 3d at 950-51.

[14] DOJ cites four Religious Land Use and Institutionalized Persons Act cases for the proposition that as long as DOJ announces the conditions, they can be unclear.  DOJ Br. 22-23.  The conditions there encouraged states and localities to *increase* protections for incarcerated individuals and were undoubtedly formulated in accordance with civil rights statutes.  Here, however, conditions that encroach upon powers historically reserved to

### D.   DOJ's Imposition of the Conditions Violates the Administrative Procedure Act.

The exception to APA review for actions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), creates only "a very narrow exception" to the "basic presumption of judicial review." *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000); *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) ("[W]e have read the exception in § 701(a)(2) quite narrowly."). The exception applies only in those "rare instances" in which a statute confers "unfettered discretion" and there is no law to apply to review the agency's exercise of discretion. *Sheikh v. U.S. Dep't of Homeland Sec.*, 685 F. Supp. 2d 1076, 1088 (C.D. Cal. 2009) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

Far from granting "unfettered discretion" to DOJ, *Weyerhaeuser Co.*, 139 S. Ct. at 370, the FY 2018 OJP appropriation specifically limits sums of money to be disbursed through its line items and pursuant to specific provisions of the Juvenile Justice Act, as discussed above. DOJ relies on *Lincoln v. Vigil*, 508 U.S. 182 (1993), and *Int'l Union v. Donovan*, 746 F.2d 855 (D.C. Cir. 1984), to propose a blanket rule that grant programs created in accordance with lump-sum appropriations are unreviewable because there is "no law to apply." DOJ Br. 15. But these cases do not so hold, and in fact, were careful *not* to reach the conclusion DOJ advocates for. *First*, both opinions recognized Congress *could* expressly place limitations on the funding that the agencies would be bound to follow. *See Lincoln*, 508 U.S. at 193; *Donovan*, 746 F.2d at 861. Here, Congress did just that, appropriating funds to be administered "pursuant to" and "in accordance with" the Juvenile Justice Act. Dep't of Justice Appropriations Act, 132 Stat. at 422-23.

the States should not be allowed to contain any "marginal uncertainty" regarding their "outer boundaries," as DOJ proposes. DOJ Br. 22; *see also Riley*, 106 F.3d at 569.

*Second*, both *Lincoln* and *Donovan* involved agency re-allocations of money from one program to another but still within the permissible objectives set out by the spending statute.  *See Lincoln*, 508 U.S. at 194 ("The reallocation of agency resources . . . clearly *falls within the [agency's] statutory mandate* . . . and respondents, indeed, do not seriously contend otherwise.") (emphasis added); *Donovan*, 746 F.2d at 861 (agency not required to "use the money for one project rather than another" when "distribut[ing] the funds among some or all of the *permissible objects* as it sees fit") (emphasis added).  Here, however, DOJ is not proposing to move lawfully-allocated monies from one grant program to another.  Instead, DOJ seeks to condition funds for the Gang Suppression Grant in a manner wholly *ultra vires* to the Juvenile Justice Act and the appropriating legislation.  Thus, unlike in *Lincoln* and *Donovan*, Congress's statutory limitations in the appropriation and Juvenile Justice Act supply law for this Court to apply.

Under the APA, agency actions must be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  DOJ's imposition of the Conditions is "not in accordance with law" for reasons discussed *supra* II(A)-(B)—DOJ's action is inconsistent with the statutes that authorize the grant program; it rests atop statutes that violate the Tenth Amendment anti-commandeering principle as applied to States and localities; and it violates the Spending Clause.  *See Multnoma Cty. v. Azar*, 340 F. Supp. 3d 1046, 1067-68 (D. Or. 2018).

DOJ's imposition of the Conditions is also arbitrary and capricious.  Federal agencies must engage in "reasoned decisionmaking."  *Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir. 2000).  An agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (quotations omitted).  DOJ has done neither here.

The Court looks solely to the Administrative Record to determine whether DOJ articulated a rational basis for its action.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).  The Court cannot infer DOJ's reasoning for imposing these six Conditions on the Gang Suppression Grant from silence or implications.  *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005).  In its brief, DOJ does not respond to the City's point that the Administrative Record in this case is identical to the Administrative Record in cases only litigating the Byrne JAG grant.  *See* LA Br. 18.  That DOJ made *no findings unique to the Gang Suppression Grant* is not a minor concession.  DOJ's lack of findings should be taken as "mere silence" or "unstated assumptions" that cannot rationalize DOJ's action.  *Pac. Coast Fed'n*, 426 F.3d at 1091.

To demonstrate its supposed reasoned decisionmaking, DOJ makes the conclusory statement, at a high level of abstraction, that "it is reasonable for OJP to deny federal law enforcement funding to a program or activity that releases aliens that are suspected or convicted of criminal conduct without allowing federal officials to interrogate or apprehend those aliens."  DOJ Br. 26.  DOJ further claims that the Harboring Condition "responded to further developments."  *Id.* at 27.  This level of generality is misleading. The "further developments" consisted of a tweet by the Mayor of Oakland that had nothing whatsoever to do with local juvenile rehabilitation programs.  Moreover, DOJ's rationale knows no bounds; under it, DOJ would be allowed to condition *any* law enforcement funding—regardless of the statute that authorized it—on local police departments' participation in federal civil immigration enforcement.  To be clear, the Conditions here, which affirmatively impose an obligation on local police to change their policies in order to assist with immigration enforcement, have *nothing* to do with the Juvenile Justice Act.  This wholesale assertion of agency authority, disconnected from

any facts or statutory analysis whatsoever, is precisely what the APA was designed to curb.

Instead of explaining any "rational connection between the facts found and the choice made," *Encino Motorcars*, 136 S. Ct. at 2125, DOJ points to the Ninth Circuit's recent opinion on a different grant program, the COPS Hiring Grant, based in a different statute entirely.  The fact that DOJ believes the Ninth Circuit's decision on the COPS program is dispositive of the City's APA claims regarding the Gang Suppression Grant only confirms the nonexistence of reasoned decisionmaking as pertains to conditions on disbursing funds under *this* grant program.

## E.    A Program-Wide Injunction Is Appropriate.

Los Angeles has established that it meets each of the requirements for permanent injunctive relief, *see* LA Br. 19-20, and DOJ does not attempt to argue otherwise.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (holding that a party abandons claims by not defending them in opposition to a motion for summary judgment).

DOJ's only argument related to permanent injunctive relief is that the injunction should be limited to Los Angeles.  But DOJ offers no reason why the City and jurisdictions similar to it should be deprived of *complete* relief from the constitutional harm DOJ imposes with its unlawful Conditions, and "[t]here is no general requirement that an injunction affect only the parties in the suit," *Bresgal v. Brock*, 843 F.2d 1163, 1169-70 (9th Cir. 1987).  When a constitutional violation has been shown, as it has been here, "[t]he nature of the . . . remedy is to be determined by the nature and scope of the constitutional violation."  *Missouri v. Jenkins*, 515 U.S. 70, 89 (1995) (quotation omitted).  Here, the scope of the violation is nationwide because DOJ seeks to impose the Conditions on *all* applicants for and recipients of the Gang Suppression Grant, which is to be equitably distributed geographically throughout the United States.  *See* 34 U.S.C. § 11171(a).  All potential jurisdictions that would be applicants to the Gang Suppression

Grant program suffer an affront to their sovereignty when DOJ manipulates their police power in a manner unauthorized by the Constitution or by Congress. DOJ's authority, or lack thereof, will not vary by jurisdiction, another reason that nationwide relief is proper.

In addition, program-wide relief is "compelled" here because the relief for APA violations is to set aside the agency action, not to simply enjoin it as it applies to a single jurisdiction. *See Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007), *aff'd in part, rev'd in part on other grounds by Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ("nationwide injunction . . . is compelled by the text of the Administrative Procedure Act," because unlawful agency action must be "set aside" (citing 5 U.S.C. § 706(2)(A))); *see also Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("ordinary result" is that unlawful agency action is "vacated," not that its "application to the individual petitioners is proscribed").

## III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for partial summary judgment, deny Defendants' motion for partial summary judgment, and enter a permanent injunction preventing Defendants from conditioning, withholding, or delaying Gang Suppression Grant awards on the basis of the Conditions.

///
///
///
///
///
///
///
///
///

1    Dated: October 11, 2019                    Respectfully Submitted,

2

3

4    MITCHELL A. KAMIN                          By: _____
     NEEMA T. SAHNI                                  MICHAEL N. FEUER
5    JESSICA R. HANSON                               City Attorney
     Covington & Burling LLP
6    1999 Avenue of the Stars, Suite 3500       JAMES P. CLARK
7    Los Angeles, California 90067-4643         Chief Deputy City Attorney
                                                KATHLEEN A. KENEALY
8    DAVID M. ZIONTS, *pro hac vice*            Chief Assistant City Attorney
9    IVANO M. VENTRESCA, *pro hac vice*         LEELA A. KAPUR
     BENJAMIN L. CAVATARO, *pro hac*            Executive Assistant City Attorney
10   *vice*                                     VALERIE L. FLORES
11   Covington & Burling LLP                    Managing Senior Assistant City Attorney
     One CityCenter                             MICHAEL DUNDAS
12   850 Tenth Street NW                        Deputy City Attorney
13   Washington, DC 20001                       DANIA MINASSIAN
                                                STEVEN H. HONG
14                                              200 North Main Street, City Hall East
15                                              Room 700
                                                Los Angeles, California 90012
16                                              Telephone: (213) 978-8344
17                                              Facsimile: (213) 978-8312

18

19                                              *Attorneys for Plaintiff*
20                                              *City of Los Angeles*

21

22

23

24

25

26

27

28
                                      28
     CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS'
                               MOTION FOR PARTIAL SUMMARY JUDGMENT