JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| CITY OF LOS ANGELES, | CASE NO. 2:18-cv-07347-JLS-JC |
|---|---|
| Plaintiff, | |
| v. | **ORDER (1) GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 82); AND (2) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 88)** |
| WILLIAM P. BARR, Attorney General of the United States, et al., | |
| Defendants. | |

On August 21, 2019, plaintiff City of Los Angeles ("City") filed a motion for partial summary judgment and permanent injunction. ("City MSJ," Doc. 82-1.) On September 20, 2019, Defendants filed a motion for partial summary judgment and opposition to the City MSJ. ("Barr MSJ," Doc. 88.) The Motions have since been fully briefed.

Having considered the parties' briefs and supporting materials, the Court GRANTS IN PART the City's MSJ and DENIES the Barr MSJ.

I.     **BACKGROUND**

    A.     **Relevant Procedural Background**

On September 29, 2017, City filed a Complaint in related-case number 2:17-cv-07215 challenging the Department of Justice's ("DOJ's") "Notice" and "Access" conditions on the Fiscal Year 2017 Edward Byrne Memorial Justice Assistance Grants ("Byrne JAG") Program and funding consideration factors for the Community Oriented Policing Services ("COPS") Hiring Program. The Court[1] granted City's application for preliminary injunction, enjoining the Notice and Access Condition in Fiscal Year 2017 Byrne JAG funding. The Ninth Circuit affirmed on October 31, 2019, finding that the conditions were ultra vires. *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) ("Because none of DOJ's proffered bases for statutory authority gives the Attorney General or the Assistant AG the power to impose the notice and access conditions, the conditions are ultra vires.")

The Court had also granted summary judgment in favor of City on its claims concerning DOJ-awarded "bonus points" in relation to the COPS grant. The Ninth Circuit reversed, finding that the immigration-related considerations at issue in the COPS grant did not violate the Spending Clause, did not exceed DOJ's statutory authority, and did not violate the Administrative Procedures Act ("APA"). *See City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019).

---

[1] The Honorable Manuel L. Real, presiding.

In this case, on February 15, 2019, the Court granted summary judgment in favor of City on its claims pertaining to the conditions on the 2018 Byrne JAG Grant and denied Defendants' motion to dismiss, finding that City had standing to challenge the claims now before this Court. (Doc. 62.) The Court also entered a nationwide permanent injunction against certain grant requirements on a Fiscal Year 2018 grant, the Gang Suppression Planning Grants Program ("Gang Suppression Program"), which DOJ created under the Juvenile Justice and Delinquency Prevention Act of 1974 (the "Juvenile Justice Act" or "Act"). (*Id.*) Defendants appealed. Then, on May 10, 2019, the Court granted the parties' joint motion for an indicative ruling, indicating that if the Ninth Circuit were to partially remand, the Court would vacate the portion of its order and injunction concerning the Gang Suppression Program. (Doc. 74.) After the Ninth Circuit granted a limited remand, the Court[2] vacated the portions of its February 15, 2019 Order concerning the Gang Suppression Program. (Doc. 79.)

Counts 5-8, which concern the Gang Suppression Program, are the only Counts now before the Court.

**B.   Relevant Factual Background**

Congress enacted the Juvenile Justice Act to: (1) "support State, tribal, and local programs that prevent juvenile involvement in delinquent behavior"; (2) "assist State, tribal, and local governments in promoting public safety by encouraging accountability for acts of juvenile delinquency"; (3) "assist State, tribal, and local governments in addressing juvenile crime through the provision of technical assistance, research, training, evaluation, and the dissemination of current and relevant information on effective and evidence-based programs and practices for combating juvenile delinquency"; and (4) "support a continuum of evidence-based or promising programs . . . that are trauma informed, reflect the science

---

[2] The Honorable R. Gary Klausner, presiding. The case was reassigned to the undersigned judge on December 31, 2019.

of adolescent development, and are designed to meet the needs of at-risk youth and youth who come into contact with the justice system." 34 U.S.C. § 11102.

Section 11171(a), titled "Authority to make grants," provides in relevant part:

> The Administrator may make grants . . . to carry out projects for the development, testing, and demonstration of promising initiatives and programs for the prevention, control, or reduction of juvenile delinquency. The Administrator shall ensure that, to the extent reasonable and practicable, such grants are made to achieve an equitable geographical distribution of such projects throughout the United States.

34 U.S.C. 11171(a). Similarly, Section 11172, titled "Grants for technical assistance," provides that the "Administrator may make grants to and contracts with public and private agencies, organizations, and individuals to provide technical assistance to States [and] units of general local government . . . to carry out the projects for which grants are made under section 11171." *Id.* § 11172. As for eligibility, Section 1173 provides that "[t]o be eligible to receive a grant . . . , a public or private agency, Indian tribal government, organization, institution, individual, or combination thereof shall submit an application to the Administrator at such time, in such form, and containing such information as the Administrator may reasonably require by rule." *Id.* § 11173.

DOJ created the Gang Suppression Program in 2018 pursuant to §§ 11171–11172 and the DOJ's Fiscal Year 2018 appropriation. (Doc. 47-16 at AR01482.) The solicitation for the Gang Suppression Program (the "Solicitation")[3] sought proposals from jurisdictions with "high levels of youth-perpetrated gun crime and gang violence" to undertake "strategic planning and capacity-building work through multidisciplinary and community partnerships." (*Id.* at AR01420–21.) To accept an award, "state or local government entity" applicants would be required to submit "the specific certifications regarding compliance with certain federal laws[] attached to" the Solicitation. (*Id.* at AR01477.) Those certifications include the following guarantees:

---

[3] The Solicitation forms part of the Administrative Record. (*See* Doc. 47-16 at AR01476–AR01530.)

4

1. **Access:** "permit [Department of Homeland Security ('DHS')] agents to have access to any correctional facility in order to meet with [a noncitizen] (or an individual believed to be [a noncitizen]) and inquire as to his right to be or remain in the United States." (*Id.* at AR01515.)

2. **Notice:** "provide (where feasible) at least 48 hours' advance notice to DHS regarding the scheduled release date and time of [a noncitizen] in the recipient's custody when DHS requests such notice in order to take custody of the [noncitizen] pursuant to the Immigration and Nationality Act." (*Id.*)

3. **8 U.S.C. §§ 1373 and 1644:** certify compliance with 8 U.S.C. § 1373 and 8 U.S.C. § 1644, which prohibit restrictions on the maintenance or exchange with DHS (or other government entities) of information regarding the citizenship or immigration status of individuals, or which, put differently, "promote information sharing and other cooperation between state and local law enforcement and federal immigration authorities." (Doc. 47-16 at AR01451, AR01606.)

4. **Harboring:** a recipient shall not "publicly disclose federal law enforcement information in an attempt to conceal, harbor, or shield certain individuals from detection, including in violation of 8 U.S.C. § 1324(a)." (*Id.* at AR01629.)

5. **Questionnaire:** applicants must complete a questionnaire regarding whether their jurisdiction has any laws, policies or practices impacting employees' communications with federal immigration authorities. (*See id.* at AR01505, AR01526.)

6. **8 U.S.C. § 1366**: certify that a recipient will not "impede" the Attorney General's statutory obligation to provide reporting to Congress under 8 U.S.C. § 1366(1), (3) regarding noncitizens incarcerated in State and federal prisons and the removal of "criminal [noncitizens] subject to removal" from the United States. (*See id.* at AR01527; 8 U.S.C. § 1366.)

The Court collectively refers to these as the "Conditions" or "challenged Conditions."

With respect to the Access, Notice, § 1373, § 1644, § 1366, and Harboring Conditions, applicants are not required to certify compliance until after they have been selected for the award. Conversely, applicants must complete the Questionnaire as part of their application. City refused to certify compliance with the Conditions in its application but answered the Questionnaire. At the time briefing on the Motions closed, DOJ had not decided which applicants will receive an award under the Program.

## II.   LEGAL STANDARD

A court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court may grant summary judgment on all or part of a claim. *See id.* Facts are "material" only if a dispute about them could affect the outcome of the case under applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

## III.   DISCUSSION

City moves for partial summary judgment on Counts 5-8 and to permanently enjoin Defendants from imposing the challenged Conditions. In support of its position, City argues that Defendants' implementation of the Gang Suppression Program (1) is ultra vires agency action and violates separation of powers principles; (2) violates the Constitution's Spending Clause; and (3) violates the APA. Defendants move for partial summary

judgment on the same Counts, arguing that the Gang Suppression Program comports with the Constitution and is not subject to APA review or, to the extent the Program is subject to APA review, that it does not violate the APA.

### A.   Ultra Vires Agency Action and Violation of Separation of Powers

City contends that, as evinced by the Juvenile Justice Act's purpose, grant authority, and grant eligibility provisions, the Act precludes the imposition of any immigration-related conditions.  Accordingly, City argues, the Conditions are ultra vires and violate separation of powers principles.  City premises this argument on its contention that, based on the relevant portion of the Consolidated Appropriations Act, 2018, "any authority to impose the Conditions on the Gang Suppression Grant must be based in the Juvenile Justice Act."  (City MSJ at 12–13.)  Defendants advance a different reading of the Appropriations Act, arguing that "[t]he nature of the congressional authorization for th[e] [P]rogram . . . grants the [DOJ] wide latitude to develop the program, including the discretion to adopt the challenged requirements."  (Barr MSJ at 12.)

"[A]n agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 357 (1986).  In other words, "[a]n agency may not confer power upon itself.  To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to [impermissibly] grant to the agency power to override Congress."  *Id.*  Indeed, the Supreme Court "expect[s] Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014) (internal quotation marks omitted).  When agencies "act beyond their jurisdiction, what they do is ultra vires." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).  Finally, "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."  31 U.S.C. § 1301(a); *cf. United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) ("The [Appropriations] Clause has a

'fundamental and comprehensive purpose . . . to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents.'") (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 427–28 (1990)).

"In reviewing the lawfulness of Defendants' conduct, the Court thus begins . . . by determining whether the disputed action exceeds statutory authority." *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 910 (N.D. Cal. 2019). DOJ's Fiscal Year 2018 appropriation includes funds for "grants, contracts, cooperative agreements, and other assistance authorized by the Juvenile Justice and Delinquency Prevention Act of 1974 ('the 1974 Act')." Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 422. More specifically, Congress allocated:

> (3) $27,500,000 for delinquency prevention, as authorized by section 505 of the 1974 Act, of which, pursuant to sections 261 and 262 [(§§ 11171–11172)] thereof—
> . . . .
> (B) $4,000,000 shall be for gang and youth violence education, prevention and intervention, and related activities;
> . . . .
> (E) $8,000,000 shall be for community-based violence prevention initiatives, including for public health approaches to reducing shootings and violence; . . .

*Id.* at 422–23.

Pointing to this language, Defendants contend that the challenged Conditions are authorized by this Appropriations Act, which Defendants claim authorizes the Gang Suppression Program by way of a lump sum appropriation that purportedly vests wide discretion in DOJ's administration of the Program irrespective of the Act's eligibility requirements or other limitations.

Even though the Appropriations Act provides that the relevant congressional appropriation is "authorized by" the Juvenile Justice Act "pursuant to sections 261 and 262 thereof," Defendants claim that the appropriation "is not tied to any substantive statutory

8

program authorization" because "[a]lthough Congress provided that the funds were appropriated 'pursuant to sections 261 and 262' of the [Juvenile Justice Act], the appropriation was related to those provisions only in a general sense." (Barr MSJ at 13, 14 n.6.[4]) But "the availability of a lump-sum appropriation may be restricted by provisions appearing in statutes other than appropriation acts, such as authorization acts." U.S. Gov't Accountability Off., GAO-06-382SP, Principles of Federal Appropriations Law 6-10 (3d ed. 2004). "For example, if an agency receives a line-item authorization and a lump-sum appropriation pursuant to the authorization, the line-item restrictions and earmarks in the authorization act will apply just as if they appeared in the appropriation act itself." *Id.*

DOJ's *own Solicitation* confirms that the Program "is authorized pursuant to [§§] 11171-11172" of the Act, under which DOJ may make grants "to carry out projects for the development, testing, and demonstration of promising initiatives and programs for the prevention, control, or reduction of juvenile delinquency." 34 U.S.C. § 11171(a). And, crucially, in its "Rules of construction" section, the Act provides that "[n]othing in th[e] subchapter [containing §§ 11171–11172] . . . shall be construed . . . to prevent financial assistance from being awarded through grants under this subchapter to any otherwise eligible organization." *Id.* § 11188. In Section 11173, the Act expressly sets forth criteria for grant eligibility: "submit an application to the Administrator at such time, in such form, and containing such information as the Administrator may reasonably require by rule." *Id.* § 11173. Conspicuously absent from Section 11173 is an authorization for DOJ to restrict eligibility by conditioning grants on priorities embodied in *other federal statutes*.

Indeed, the Court rejects Defendants' reliance on the Immigration and Nationality Act (the "INA") for "implied authority" to impose the Conditions based on congressional contemplation *in the INA* of "coordination between federal officials and state and local

---

[4] As City aptly points out, Defendants' reliance on *Lincoln v. Vigil*, 508 U.S. 182 (1993) and *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Donovan*, 746 F.2d 855 (D.C. Cir. 1984) is misplaced. Both cases applied distinct APA reviewability standards and did not engage in *ultra vires* review. *Cf. Sierra Club*, 379 F. Supp. 3d at 910 (rejecting defendants' conflation of APA and *ultra vires* review, explaining that "*ultra vires* review exists outside of the APA framework").

9

officials on immigration enforcement." (*See* Barr MSJ at 7.) The INA is referenced nowhere in the Gang Suppression Program's authorizing statute or appropriation, nor does the INA reference those statutes. *See Sierra Club*, 379 F. Supp. 3d at 909 ("[A]ll uses of appropriated funds must be affirmatively approved by Congress, and the mere absence of a prohibition is not sufficient.") (internal quotation marks omitted); *Gonzales v. Oregon*, 546 U.S. 243, 274 (2006) (". . . Congress is unlikely to alter a statute's obvious scope and division of authority through muffled hints[.]").

Defendants' argument that the Gang Suppression Program is not circumscribed by its authorizing statute is further belied by the fact that the appropriation's language is nearly identical to the Byrne JAG Program's appropriation: Congress provided "$415,500,000 for the [Byrne JAG] program as authorized by subpart 1 of part E of title I of the [Omnibus Crime Control and Safe Streets Act of 1968]" and, with respect to programs like the Gang Suppression Program, "$27,500,000 for delinquency prevention, as authorized by section 505 of the [Juvenile Justice] Act, of which, pursuant to sections 261 and 262 . . . $4,000,000 shall be for gang and youth violence education, prevention and intervention, and related activities." Consolidated Appropriations Act, 2018, 132 Stat. at 420, 423. The Ninth Circuit's recent holding that DOJ's imposition of the notice and access conditions on the Byrne JAG Program awards—conditions substantively identical to the Notice and Access Conditions at issue here—was *ultra vires* compels the conclusion that the challenged Conditions are likewise improper. *See City of Los Angeles v. Barr*, 941 F.3d at 944.

Defendants' invocation of 34 U.S.C. § 10102(a)(6) as authority for the Conditions is likewise foreclosed by the Ninth Circuit's holding in *City of Los Angeles v. Barr*. Pursuant to Section 10102(a)(6), the Assistant Attorney General shall "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including *placing special conditions on all grants*, and determining priority purposes for formula grants." 34 U.S.C. § 10102(a)(6) (emphasis added). In *City of Los Angeles v. Barr*, the Ninth Circuit construed "special

10

conditions" to mean "*individualized* requirements included in a *specific* grant"—*i.e.*, "tailored requirements" the agency may "impose . . . when necessary," on a grantee-by-grantee basis. *See* 941 F.3d at 941 (emphasis added). Accordingly, the Ninth Circuit held that the Byrne JAG's notice and access conditions are not "special conditions" under 10102(a)(6) "because they are not conditions triggered by specific characteristics not addressed by established conditions." *Id.* at 942. That reasoning applies here with equal force, and Defendants offer neither distinction nor legal authority that would compel a different conclusion. Like the Notice and Access Conditions both here and in *City of Los Angeles v. Barr*, the remaining challenged Conditions are uniformly imposed on all applicants. *Cf. City of Philadelphia v. Att'y Gen.*, 916 F.3d 276, 288 (3d Cir. 2019) (reasoning that Congress would not hide "such a broad power—the power to place *any* special conditions on *all* grants—in a statute outlining ministerial duties for an Assistant Attorney General"), *reh'g denied* (June 24, 2019).

In line with their argument regarding Section 10102(a)(6), Defendants next argue that the Assistant Attorney General's duty under 34 U.S.C. § 10102(a)(2) to "maintain liaison . . with State governments in matters relating to criminal justice" authorizes Defendants' imposition of the Harboring and Questionnaire Conditions. According to Defendants, "[a]n agency statutorily charged with maintaining that 'liaison' is naturally empowered to secure information regarding" local law enforcement practices that conflict with federal objectives and is "entitled to insist on the protection of sensitive law enforcement information." (Barr MSJ at 16.) This argument has been soundly rejected, for "[t]he structure of Section 10102 does not support the contention that 'maintain liaison' . . . provides more than a ministerial duty on the Attorney General to maintain communication with other Federal and State agencies," nor does it evidence congressional intent "to grant the DOJ broad authority to impose the challenged conditions over states and local governments receiving funds." *City & Cty. of S.F. v. Sessions*, 372 F. Supp. 3d 928, 944 (N.D. Cal. 2019) (citing *City of Philadelphia*, 916 F.3d at 288; then citing *City of Chicago v. Sessions*, 888 F.3d 272, 285 (7th Cir. 2018), *reh'g en banc granted in part,*

11

*opinion vacated in part on other grounds*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated*, No. 17-2991, 2018 WL 4268814 (7th Cir. Aug. 10, 2018)).

In sum, the Court finds that the Act supplies DOJ's sole statutory grant-making authority with respect to the challenged Conditions and turns to whether the Conditions constitute permissible agency action under the Act.

According to City, "DOJ is *not* using the Conditions as a filter for determining *which* applications are best suited to the grant's purposes." (City MSJ at 14.) Instead, five of the challenged Conditions flout the Act's express eligibility criteria and rules of construction by compelling changes to existing state and local law enforcement—rather than merely collecting information about such enforcement—and declining to award congressionally appropriated funds to applicants that meet the Act's eligibility criteria. In their opening brief, Defendants offer neither argument nor authority to rebut City's contention. Instead, for the first time on reply, Defendants argue (in the alternative) that the challenged Conditions *are* permissible under the Act, for its statutorily enacted purposes include "support[ing] State, tribal, and local programs that prevent juvenile involvement in delinquent behavior" and "assist[ing] State, tribal, and local governments in promoting public safety by encouraging accountability for acts of juvenile delinquency." 34 U.S.C. § 11102(1)–(2). According to Defendants, the challenged Conditions comport with these purposes "by targeting transnational gangs that frequently prey on juveniles" and "attacking one particular source of juvenile delinquency: deportable members of transnational gangs." (Barr Reply, Doc. 93 at 7.)

But Defendants fail to meaningfully grapple with the central premise of City's ultra vires argument, namely that the Conditions constitute eligibility requirements Congress chose *not* to include in the Act's "Eligibility" provision and that the Act does not delegate broad authority to the Attorney General to impose extra-statutory grant conditions. Defendants' invocation of a federal priority "to attack the dangerous effects of transnational gangs that prey on juveniles" (Barr MSJ at 17)—however critical to the United States and manifest in other legislation—does nothing to undercut City's premise,

12

for Defendants fail to explain why these priorities translate to authorization *under the Juvenile Justice Act* for DOJ to craft extra-statutory conditions that preclude applicants otherwise eligible under the Act from receiving grants for which they are eligible.

The fallacy of Defendants' argument is even more pronounced in light of the Ninth Circuit's ruling in *City of Los Angeles v. Barr*, 929 F.3d 1163, which the court expressly limited to consideration of factors that did *not* amount to "conditions of receiving a grant":

> Before turning to the merits of Los Angeles's claims, we first note the limited nature of the dispute. As noted above, in administering a federal grant program and scoring the applications it receives, DOJ gives additional points to an applicant that chooses to focus on the illegal immigration area (instead of other focus areas) and gives additional points to an applicant who agrees to the Certification. Choosing the illegal immigration area and submitting the Certification *are not conditions of receiving a grant*, and numerous applicants received grants without doing so. Likewise, numerous applicants who chose the illegal immigration focus area or submitted the Certification did not receive a grant. The question before us, therefore, is whether DOJ's scoring practice of giving these additional points is unconstitutional or exceeds DOJ's authority in administering the grant program.

*Id.* at 1174 (emphasis added).

The statute at issue in the case delegated "broad authority" to DOJ to "fill gaps" by crafting eligibility factors to disburse $98.5 million in grant funding among 1,119 jurisdictions requesting almost $410 million. *See id.* at 1172, 1177. Here, on the other hand, the challenged Conditions *are* "conditions of receiving a grant": they are designed to deny funds to jurisdictions that fail to meet extra-statutory criteria relating to immigration enforcement, as opposed to providing those jurisdictions "extra points" in a competitive application process. While the Ninth Circuit made clear that the Attorney General has discretion in the context of the COPS competitive grant process to assess several non-dispositive factors in determining grant eligibility, the Conditions here concern a different authorizing statute with no broad delegation of gap-filling authority.

For these reasons, the Court concludes that Congress did not grant DOJ the power to impose the challenged Conditions; their imposition, therefore, is ultra vires. Because

13

the Court so concludes, it need not reach City's alternative grounds for partial summary judgment.

### B. Permanent Injunction

To obtain a permanent injunction, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that . . . monetary damages[] are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). Defendants do not challenge the applicability of these factors, or the propriety of a permanent injunction given the Court's conclusion in this Order. Rather, Defendants argue that the injunction should be limited to City.

The "Supreme Court has cautioned that 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs' before the court." *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Moreover, where "the record is insufficiently developed as to the question of the national scope of the injunction," injunctions are properly limited to the jurisdiction for which the record is adequately developed. *See City & Cty. of S.F. v. Trump*, 897 F.3d 1225, 1244–45 (9th Cir. 2018). City's vague warning of an assault on the sovereignty of "[a]ll potential jurisdictions" (City Reply, Doc. 89 at 26) does not persuade the Court that an injunction limited to City would not remedy its specific harms or provide it complete relief, nor does City provide the Court with enough data to assess the propriety or ramifications of its requested nationwide injunction. The Court, in its discretion to "order[] an appropriate equitable remedy," therefore finds that a nationwide injunction is neither warranted nor appropriate based on the present record. *See City & Cty. of S.F. v. Trump*, 897 F.3d at 1245; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("An

injunction is a matter of equitable discretion . . ."). Because the Court so finds, it applies the four-factor test to a permanent injunction limited to City.

First, City will suffer irreparable harm if compelled to alter its longstanding policing policies lest it jeopardize its ability to compete for future funding. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 411 (9th Cir. 2015) ("A rule putting plaintiffs at a competitive disadvantage constitutes irreparable harm."). Second, money damages cannot ensure City's ability to compete on a level playing field in future grant cycles. Third, while City would suffer greatly from an inability to compete fairly for federal resources, a permanent injunction "would [] cause the DOJ—at most—[only] a minor hardship: paying funds that Congress had appropriated for disbursement consistent with the purposes of the [Gang Suppression] Program." *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 658 (E.D. Pa. 2017). Finally, like the Court in *City of Philadelphia v. Sessions*, this Court, too, "finds that the public interest is better served if the City is not forced to choose between foregoing the [] Grant funds and losing hard-fought goodwill amongst the immigrant community." *Id.* In sum, City has carried its burden under the test and a permanent injunction limited to City is therefore appropriate.[5]

///
///
///
///
///
///
///
///

---

[5] Because the permanent injunction the Court enters extends only to redress City's injuries, Defendants' argument that City lacks standing to seek an injunction pertaining to non-parties is moot.

15

## IV. CONCLUSION

For the foregoing reasons, the City MSJ is **GRANTED IN PART** and the Barr MSJ is **DENIED**. Defendants and their officers, agents, servants and employees are permanently **RESTRAINED AND ENJOINED** from conditioning, withholding, or delaying Gang Suppression Planning Grants Program awards with respect to City based on the six immigration-related conditions imposed on applicants of the Fiscal Year 2018 Gang Suppression Program. Plaintiff is ORDERED to prepare and file forthwith a proposed judgment in accordance with this Order and the Local Rules.

DATED: June 17, 2020

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE